# Richmond

## CLARIS KEATTS v. M. G. SHELTON, ADM'R, ETC.

January 15, 1951.

Record No. 3715.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Miller, JJ.

The opinion states the case.

*Langhorne Jones* and *John B. Browder*, for the plaintiff in error.

*Joseph Whitehead, Jr.*, and *W. C. Thompson*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

M. G. Shelton, administrator of the estate of his deceased wife, Emma Shelton, instituted this action against Claris

Keatts for the wrongful death of Mrs. Shelton, who was run over and killed by the automobile operated by the defendant. The defendant filed pleas of not guilty and contributory negligence of plaintiff's decedent. After hearing the evidence, viewing the scene of the accident, and considering the instructions, the jury returned a verdict for the plaintiff in the sum of $10,000, which was approved by the trial court. We allowed this writ of error.

Both in the lower court and before us the plaintiff presented his case on the theory that Keatts caused the death of his decedent, in the negligent operation of his vehicle without adequate brakes and without maintaining a proper lookout, and, despite the contributory negligence of the decedent, failed to exercise ordinary and reasonable care to avail himself of a last clear chance to avoid the accident.

The defendant asks us to enter final judgment in his favor or remand the case for a new trial, upon the grounds that the lower court erred in failing to sustain his motions to strike the evidence, made at the completion of the plaintiff's evidence, and after the conclusion of all the evidence; in refusing to set aside the verdict as contrary to the law and the evidence and without evidence to support it; in refusing to admit certain evidence; in granting certain instructions; and in not declaring a mistrial following a view of the scene of the accident, when the premises presented a changed condition.

The accident occurred on June 6, 1949, about 5:30 o'clock, p. m., on a secondary highway in Pittsylvania county, Virginia. The road, in open country, ran north and south. The weather was fair, the visibility good, and the highway dry. The road is a two-lane highway, the paved portion of which is 15 feet, 9 inches in width, with dirt shoulders, on its west side 7 feet wide and on its east side 6 feet. Prior to the accident, M. G. Shelton had been proceeding south with his wife, three children, and a Mr. Jordan as passengers in his automobile. Two of his children were twin boys, 9 years of age, and the other a 4-year old son, named Larry. Approaching from the south was an

automobile driven by the defendant. He was accompanied by four passengers, two on the front seat of the car and two on the rear.

The plaintiff testified as to the following circumstances:

He drove his car to a point nearly opposite his residence on the east side of the highway, and parked it off the hard surface, completely on the western side of the road, so that his wife and children might alight to go to their home. He remained at the wheel of the car to take Jordan to the latter's destination. His wife and three children alighted from the right side of his car and proceeded to its rear. The twin boys were in front, the 4-year old boy a few steps behind them, and Mrs. Shelton a step or two behind the latter. When the twins had gotten all the way across and Larry was something like two-thirds of the way, he observed the Keatts' car about 125 feet distant. He called to his wife, "There comes a car," and she replied, "Yes, I see it." In the meantime, the Keatts' car approached, without application of its brakes or reduction of its speed. He said he saw it as it struck his wife in the northbound lane. Her body was carried by the car a distance of about thirty feet.

Upon cross-examination he was asked if he had not, at a criminal hearing held in the trial justice court, fourteen days after the accident, testified that his wife was back of his car out of his sight when the defendant's car was 35 to 40 feet away; that she did not reply to his warning to look out for it; that he did not see the accident; and that the defendant's car was stopped within 15 feet. He replied that he did not remember making such statements.

F. R. Sizemore, standing in a field 100 to 150 yards distant from the scene of the accident talking to Cecil Keatts, said he saw the defendant's automobile when it was 75 yards from the point of impact, and thought it was moving between 30 and 50 miles per hour. He heard the impact but did not see the car strike Mrs. Shelton.

Cecil Keatts said he saw defendant's car about 75 yards from the Shelton car; that it was then running 30 to 35

miles an hour; that the twin boys were standing on the east side of the road; that the defendant blew his horn, applied his brakes, and slowed his speed to 15 miles an hour; and that when Keatts' car was "right next to the front end of Shelton's car," Mrs. Shelton came out into the road from behind her husband's car, directly in front of Keatts' car. He said that defendant "stopped as quick as anybody I ever seen stop," and proceeded only "a little better than the length of the car after the collision."

Mrs. Shelton was struck in the northbound lane, the lane upon which Keatts was travelling, at a point 10 feet from the western edge of the hard surface and 5 feet, 9 inches from the eastern edge. Blood spots marked that point and another point about 30 feet away where her body was picked up. She was pronounced dead upon arrival at a hospital.

Jordan, the passenger in Shelton's car, died before the trial.

Two State police officers said that they examined the Keatts' automobile immediately after the accident and found that its brakes were defective.

At the conclusion of plaintiff's evidence, after overruling defendant's motion to strike, the court refused to allow the defendant to introduce a court reporter, who transcribed the evidence at the hearing in the trial justice court, to testify what his transcript showed with respect to the testimony of the plaintiff in that court. However, defendant was granted permission to recall Shelton later and re-examine him.

On behalf of the defendant, the following evidence was offered: Three of the passengers in his car said they saw the 9-year old boys go across the road when their car was about 60 or 70 yards away. One of them mentioned the presence of the boys. The defendant blew his horn, applied his brakes, and slowed his speed to 15 miles per hour. Just as the front door of their car was abreast the front of the parked car, they first saw Mrs. Shelton, who entered upon the highway from behind the Shelton car, parked partly on the hard surface; and that defendant "stood on

the brakes," and stopped within a car's length. They described the sequence of events as happening in "split second time." None of them saw the 4-year old boy until the moment of the collision.

The fourth passenger in Keatts' car said he was looking out across the field as they were coming down the road; that after Keatts slowed his speed and blew his horn, he observed the twin boys on the eastern side of the road; that as he turned his eyes to the front he saw Mrs. Shelton "right in front of the car;" and that as she was struck, his car "stopped right suddenly."

The defendant, driving at a speed of about 30 miles per hour, said that he saw the twin boys on the side of the road and the Shelton car when he was distant "about 75 steps;" that he did not see Mrs. Shelton until she came from behind the parked car and "trotted out" on the road; that the fender of his car was then even with the front door of the other car; and that he immediately applied his brakes, felt the impact of her body with his car, and stopped his car "in about its length." He said that "It all happened at once," and before he saw the youngest child.

It was shown that Keatts' automobile had passed a State inspection test nine days before the accident, and defendant said he had had no trouble with his brakes, and they operated perfectly at the time of the accident. One automobile mechanic said he tested them at the scene of the accident and another immediately after the car was brought to a garage, and nothing was found wrong with them.

Passengers in Keatts' car said that it skidded 4 or 5 feet when its brakes were applied at the time of the accident, and that its tire marks showed on the road.

After the conclusion of all the testimony, the jury were taken to the scene of the accident, where there were found two large spots painted red representing the blood spots referred to in the testimony but much larger. The court overruled the motion of the defendant to discharge the jury and declare a mistrial, because of the view then presented.

The defendant, after recalling the plaintiff, re-examined him as to the circumstances of the accident. Shelton repeated his former testimony. His attention was then called to the time, place, and occasion of his testimony at the hearing before the trial justice. He again said that he did not remember making the statements attributed to him. Defendant then requested the court to allow the reporter, who transcribed the evidence before the trial justice, to testify what his transcript showed as to Shelton's testimony. The court again refused to allow him to do so, upon the ground that Shelton had not denied the alleged statements and defendant had already gotten them in the record.

Sixteen instructions were given to the jury, covering the respective theories of the parties. None of them involved the principles of the so-called "Rescue Doctrine," that is, where danger is incurred to save life or prevent personal injury to others. 65 C. J. S., Negligence, section 124, page 736.

The defendant objected to an instruction relating to the requirement that an automobile should not be operated without being equipped with adequate brakes, to another relating to the driver's control in the operation of an automobile, and to two dealing with the doctrine of the last clear chance.

In our view of the case, it is only necessary to discuss two of the assignments of error.

■ The court erred in excluding proof of prior inconsistent testimony of plaintiff in the trial justice court. The evidence of Shelton was relevant and material to his case. Every one of the seven eye-witnesses of the accident, the plaintiff alone excepted, testified that Mrs. Shelton emerged on the road into defendant's view from behind the parked car just as the two cars were abreast, and that defendant stopped within the car's length. The only conflicts in the evidence were as to the condition of defendant's brakes and the statements of Shelton immediately after the accident and his testimony three and one-half months later. The credibility of Shelton, who alone undertook to place

liability upon the defendant, was material. Upon the precise point involved, we said in *McGehee v. Perkins*, 188 Va. 116, 125, 49 S. E. (2d) 304:

"We agree with the argument of counsel for McGehee that the statement of a witness that he fails to recollect or does not recall his former testimony or statement constitutes an adequate foundation for his impeachment.

"The fact that his present testimony is inconsistent with his prior testimony or statement justifies the showing of the inconsistency, provided he is given an opportunity of correcting the present testimony by directing his attention to the time, place and circumstances of the prior utterance. He cannot escape the consequences by saying he does not recall what he said on the prior occasion. See *Forde v. Commonwealth*, 16 Gratt. (57 Va.) 547, 558; Wigmore on Evidence, 3d Ed., Vol. 3, sec. 1037, p. 721, *et seq.*"

In 58 Am. Jur., Witnesses, section 781, page 430, the following is said to be the general rule:

"Mode and Sufficiency of Proof of Statements—A proper foundation having been laid for the introduction of inconsistent statements of a witness by way of impeachment, it becomes necessary to prove them. Merely calling the witness' attention to his prior contradictory statements does not amount to an attempt to get such statements before the jury."

The instruction relating to the control of an automobile reads as follows:

"The Court instructs the jury that the law of Virginia expressly prohibits any person from driving an automobile in such a manner as not to have the same *under complete control at all times*, and declares that driving an automobile under such conditions will be deemed reckless driving. And, if the jury believe that at the time of the accident or immediately before, the defendant, Claris Keatts, was driving his automobile in such a manner as not to have his car *under complete control*, then he is guilty of negligence, and if the jury believe that this negligence was the sole proximate cause of the accident, they should find a verdict in

favor of the plaintiff, unless the jury believe from the evidence that Mrs. Shelton was guilty of negligence which contributed to the accident." (Italics added).

The objection to this instruction is to the use of the italicized words. Section 46-209 of the Code of 1950, requires only that a vehicle shall be driven "under proper control."

In *Voight* v. *Reber*, 187 Va. 157, 164, 46 S. E. (2d) 15, it was held that the words "proper control" correctly furnish a standard to guide the jury in applying the evidence.

In *Gale* v. *Wilber*, 163 Va. 211, 175 S. E. 739, we expressly held that it was error to instruct the jury that it is the duty of a driver to keep his car "under complete control at all times under every condition." As we there said: "No human being can keep his automobile in complete control while it is in motion. So many conditions may suddenly come into being, not capable of being foreseen, that complete control is impossible of attainment."

Whether the doctrine of the last clear chance applies in a given case is to be determined by the facts of that case. In view of what we have said, it is apparent that in this case the evidence was not fully developed. It is sufficient for us to say that in cases of this type, we have held that a plaintiff is not entitled to recover under this doctrine on mere peradventure.

The doctrine of the last clear chance does not supersede the defense of contributory negligence. It does not save a plaintiff from the bar of his own negligence unless it is shown that after the situation of peril created by his previous negligence was discovered, or ought to have been discovered, the defendant had a last clear chance to prevent the accident by using ordinary care. The doctrine presupposes that there must have been opportunity and time for effective action by the defendant, and the burden is on the plaintiff to establish this affirmatively by a preponderance of the evidence. These principles have been stated time and time again in the following cases: *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742, 127 S. E. 486; *Messick* v. *Mason*,

156 Va. 193, 157 S. E. 575; *Hutcheson* v. *Misenheimer*, 169 Va. 511, 194 S. E. 665; *Clark* v. *Hodges*, 185 Va. 431, 39 S. E. (2d) 252; *Jenkins* v. *Johnson*, 186 Va. 191, 42 S. E. (2d) 319; *Stark* v. *Hubbard*, 187 Va. 820, 48 S. E. (2d) 216; *De Muth* v. *Curtiss*, 188 Va. 249, 49 S. E. (2d) 250; *Hooker* v. *Hancock*, 188 Va. 345, 49 S. E. (2d) 711; *Anderson* v. *Payne*, 189 Va. 712, 718, 54 S. E. (2d) 82; *Lanier* v. *Johnson*, 190 Va. 1, 55 S. E. (2d) 442; and in Vol. 7 Digest of Va. & W. Va. Reports, Michie, Negligence, section 28 *et seq.*, page 86 *et seq.* and Vol. 5, Permanent Supplement of same digest, section 28, *et seq.*, and numerous cases cited; West's Virginia and West Virginia Digest, Negligence, sections 83, 83.1 to 83.11.

The question relating to the changed conditions at the scene of the accident is not likely to arise again.

In view of our conclusion that the defendant is entitled to a new trial for the reasons given, we do not deem it necessary to discuss any of the remaining assignments of error.

The verdict of the jury is set aside, the judgment of the trial court reversed, and the case remanded for a new trial.

*Reversed and remanded.*