# CIRCUIT COURT OF HANOVER COUNTY

Commonwealth of Virginia

v.

Michael Thorsen Youssef

March 25, 2009

Case Nos. CR05000467-00 and CR05000467-01

BY JUDGE J. OVERTON HARRIS

Michael Thorsen Youssef was convicted in this Court of animate sexual penetration and forcible sodomy on January 19, 2006. Youssef now moves this Court to set aside the verdicts and grant him a new trial on the basis of after-discovered evidence. The Court heard arguments on February 27, 2009, and took the matter under consideration. Upon thorough review of the facts and the law, the Court finds as follows.

## I. *Factual Background*

The Commonwealth's case relied upon the alleged victim's testimony, supported by the testimony of friends in whom she confided following the incident. The alleged victim testified that she had crossed paths with Youssef during a night of alcohol and narcotic-influenced partying. The testimony claimed that the alleged victim, Youssef, and another friend ended up at Youssef's apartment late in the night. At some point the alleged victim used the bathroom, and, when she emerged, only Youssef remained with her in the

apartment. The alleged victim testified that Youssef grabbed her by the wrist and told her that he wanted to show her a CD in his bedroom. She testified that she did not physically resist, but reluctantly followed as he led her upstairs by the wrist.

While upstairs, the alleged victim testified that she was thrown onto a bed and set upon by Youssef. She testified that she did not forcefully resist for fear of being hurt, but repeatedly told Youssef to stop. After resigning herself to the conclusion that some sex act was going to take place, the alleged victim consented to oral sex for fear of pregnancy. Thereafter, she dressed and left the apartment. Several days later the incident was reported to police.

Following Youssef's conviction and sentencing, a new Commonwealth's Attorney – ironically Youssef's trial counsel – was elected in Hanover County. Upon taking office, he instituted an "open-file" policy at the Office of the Commonwealth's Attorney. Youssef's new counsel examined the Commonwealth's file and discovered statements taken by police from the alleged victim upon her report of the alleged crimes. Youssef's trial counsel has testified that the statements were never disclosed to him, nor did he have any knowledge of their existence at trial. The Commonwealth does not dispute that the former Commonwealth's Attorney did not disclose the statements.

In the undisclosed police report, the alleged victim made several statements that are inconsistent with her trial testimony. First, she made no mention to police of Youssef grabbing her wrist and leading her up the stairs. In the police report she stated that Youssef wanted to play her a song and she "reluctantly said yes and went upstairs."

Second, the alleged victim stated in the police report that, while Youssef was on top of her, she "kissed him back in hopes that this would satisfy him and he would let her go." Her trial testimony did not discuss any acts of reciprocation during the encounter. At trial, the alleged victim described the various ways in which Youssef had allegedly forced himself upon her, and stated that she "had made it abundantly clear" that she did not want to engage in any type of sexual activity. TR p. 63, lines 14-18.

Finally, the alleged victim told police that Youssef "did not walk her downstairs and hardly said good-bye." At trial, the alleged victim testified that Youssef walked her downstairs, kissed her on the cheek, and offered her a ride home. TR p. 70, lines 9-11.

The Commonwealth does not dispute that the alleged victim's statements to police constitute prior statements inconsistent with her trial testimony.

## II. *Analysis*

Youssef properly brings this motion as a claim of undisclosed exculpatory or impeachment evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). Youssef alternatively claims a violation under *Giglio v. United States*, 405 U.S. 150 (1972). No evidence before the Court, however, indicates that the Commonwealth knowingly permitted false testimony at trial. The Court thus proceeds under the *Brady* theory alone.

The Supreme Court of Virginia thoroughly discussed the elements of a *Brady* claim in *Workman v. Commonwealth*, 272 Va. 633, 636 S.E.2d 368 (2006):

> There are three components of a violation of the rule of disclosure first enunciated in *Brady*: (a) the evidence not disclosed to the accused must be favorable to the accused, either because it is exculpatory, or because it may be used for impeachment; (b) the evidence not disclosed must have been withheld by the Commonwealth either willfully or inadvertently; and (c) the accused must have been prejudiced. Stated differently, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether, in its absence, he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial.

*Id*. at 644-645 (internal quotations marks, brackets, and citations omitted).

### A. *The First and Second Elements*

The undisclosed police report must be exculpatory or useful for impeachment. *Id*. at 644. Without speculating on the success of such a strategy, the prior inconsistent statements of the alleged victim could have been used to impeach her credibility. The Court expressly relied on the alleged victim's testimony for a finding of guilt, and so proof of her prior inconsistent statements would have been relevant and material. *Keatts v. Shelton*, 191 Va. 758, 764-65, 63 S.E.2d 10, 13 (1951). The first element of Youssef's *Brady* claim is thus satisfied.

The undisclosed evidence was undisputedly in the possession of the Commonwealth's Attorney at and before the time of trial and was not disclosed to Youssef's counsel. Whether willful or inadvertent, the admitted nondisclosure satisfies the second element of Youssef's *Brady* claim. *Workman*, 272 Va. at 644.

## B. *The Third Element*

Youssef must have been prejudiced by the nondisclosure of the alleged victim's prior inconsistent statements. *Id.* at 644-645. The question is whether Youssef received a fair trial absent the undisclosed police report. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *Workman*, 272 Va. at 645. In resolving the question, the Court must determine whether the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 678 (1985); *Workman*, 272 Va. at 645.

The Supreme Court of Virginia expounded upon the test of materiality as applied to *Brady* claims as follows:

> First, a "showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal (whether based on the presence of reasonable doubt or acceptance of an explanation for the crime that does not inculpate the defendant)." *Kyles*, 514 U.S. at 434. Second, materiality is not a sufficiency of the evidence test. "A defendant need not demonstrate that, after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict." *Id.* at 434-435. Third, a harmless error analysis is unnecessary once materiality has been determined. *Id.* at 435. Fourth, suppressed evidence must be "considered collectively, not item by item." *Id.* at 436. Upon consideration of these factors, a reviewing court is charged with the responsibility of determining if the suppression of evidence "undermines confidence in the outcome of the trial." *Bagley*, 473 U.S. at 678.

*Workman*, 272 Va. at 645.

The Court notes that suppressed impeachment evidence is just as material as any other exculpatory evidence. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). "The jury's estimate of the truthfulness and reliability of a given

witness may well be determinative of guilt or innocence." *Id.* That said, "[i]f newly-discovered evidence does not go to the merits of the case but merely impeaches a witness who testified at the earlier trial, generally a new trial will not be granted." *Powell v. Commonwealth*, 133 Va. 741, 750-751, 112 S.E. 657, 660 (1922).

The Commonwealth asserts that the same inconsistent statements were discovered at trial and are thus merely cumulative or corroborative of other testimony. During trial, it was revealed that the victim made some of the same inconsistent statements to the Commonwealth's supporting witnesses. TR p. 148, line 20; TR p. 160, line 12. The defense attorney illuminated the inconsistent statements both on cross-examination and in closing arguments. TR p. 163, line 25, to TR p. 164, line 3; TR p. 312, line 18.

While the same inconsistent statements may have been given to the witnesses and to police, they cannot be treated as indistinguishable for this analysis. First, a statement to police is more likely taken to be the exact words of the declarant, contemporaneously recorded by law enforcement professionals, rather than the distant recollections of laymen. The fact finder is unlikely to give statements of each type the same weight.

Second, a statement given to a witness is generally given without regard to consequences; merely words to pass an informal message between peers. A statement given to police is a statement given under penalty of law, with a reasonable expectation that it carries significant consequence. The truthfulness of a statement to police may reasonably be expected to influence law enforcement proceedings against another. Conversely, the falsehood of a statement to police may reasonably be expected to carry legal consequences for the declarant.

The previously undisclosed prior inconsistent statements were not constructively discovered at trial, nor are they merely cumulative or corroborative of the testimony elicited at trial. The statements contained within the police report were likely to have carried much greater weight in the mind of the fact finder and thus would have done greater damage to the alleged victim's credibility.

The Commonwealth further asserts a more creative dispute as to the materiality of the prior inconsistent statements. The Commonwealth suggests that, in light of the totality of the vice and confusion considered by the Court in reaching its verdict – the alcohol, the marijuana, the cocaine, *and* the elicited testimony of prior inconsistent statements – that the Court would not have been deterred in its finding of guilt by one more troubling aspect of the alleged victim's story.

This Court is unwilling to follow the Commonwealth's logic on this point. The undisclosed police report is of a substantially different character from other devices used by defense counsel for impeachment at trial. The prior inconsistent statements were not likely to be lost amid the stew of unsavory evidence that failed to dissuade the trial judge of guilt beyond a reasonable doubt.

In considering the evidence collectively, the Court is convinced that the previously undisclosed prior inconsistent statements are material, and their suppression undermines confidence in the outcome of the trial. The Commonwealth's case rested almost entirely on the alleged victim's testimony. If her credibility were successfully impeached, the case would be placed in serious jeopardy. The police report would have been an effective tool for impeachment of the credibility of the alleged victim. Given the suppression of the prior inconsistent statements, the Court is not confident in the outcome of the trial. The third and final element of Youssef's *Brady* claim is satisfied.

## III. *Conclusion*

The Commonwealth breached its duty under *Brady* to disclose the alleged victim's prior inconsistent statements, and the defendant was prejudiced as a result. The motion to set aside the verdict is granted, and a new trial is ordered.