# Richmond

## ESTA STARK v. WILLIAM Q. HUBBARD, ADM'R, ETC.

June 14, 1948.

Record No. 3331.

Present, All the Justices.

The opinion states the case.

*Herman A. Sacks,* for the plaintiff in error.

*Leon T. Seawell,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted on January 11, 1947, by Mrs. Esta Stark to recover damages for personal injuries suffered by her as a result of being struck by an automobile driven by Ellis R. Hubbard. Due to the death of Ellis R. Hubbard on November 16, 1946, the proceeding was brought against William Q. Hubbard, the administrator of the decedent. Trial by jury resulted in a verdict for the defendant. A motion to set aside the verdict as contrary to the law and evidence and because of the refusal of the court to instruct the jury as to the right of the plaintiff to recover under the doctrine of the last clear chance was overruled. Judgment was then entered for the defendant.

The plaintiff asks us to reverse the judgment for the reasons assigned in her motion to set aside the verdict in the trial court. The two assignments are so related that they may be considered together.

The first act of negligence charged against the defendant's

intestate is that he was operating his automobile at a rate of speed prohibited by statute. The second charge is that he failed to keep a proper lookout for the plaintiff. These contentions involved questions of fact, which have been answered by the verdict of the jury. If the jury was properly instructed, their verdict determined that the defendant's intestate was not guilty of negligence which was the proximate cause of plaintiff's injuries.

The controlling question is whether the court erred in failing to instruct the jury as to the duty of the defendant under the doctrine of the last clear chance. The answer is dependent upon the evidence.

The scene of the collision between the automobile and the plaintiff occurred at or near the intersection of Colley and Brandon avenues, in the city of Norfolk, Virginia. Colley avenue runs north and south, and Brandon east and west. They do not, however, run straight across each other, that is, the portion of Brandon on the east of Colley does not directly connect up with its continuation on the western side of Colley. To the south of the intersection, Spotswood avenue enters the east side of Colley avenue about half a regular block distant from Brandon.

The plaintiff testified that on October 16, 1946, about 6:30 p. m., she left a delicatessen store on the west side of Colley avenue, two doors south of Brandon avenue, on her way home, with several bundles in her arms; that she walked to the corner of the two avenues; that she looked to her right and saw no cars coming on Colley avenue; and that she started to walk across Colley avenue, between the white pedestrian lines towards the eastern side of the street. There was a car parked on the east side of Colley avenue with its front pointing north.

As to what followed after she entered the street, she said: "I had about two or three steps to take before I was in front of that car when I saw a car coming, and I thought I had plenty of time to get out of his way, but, evidently I did not because, before I could reach that parked car I was hit." She declared that she "was about

three-fourths of the way across the street," when she first saw the car which struck her. It was then "on the other side of Spotswood" avenue, the street a short block south of Brandon avenue.

She further testified that she could not tell how fast the approaching car was running; that she was "about two or three feet" from the parked car on the east side when she was struck; and that the lights of the Hubbard car were burning, and there was nothing to prevent its driver from seeing her.

On cross-examination, Mrs. Stark said that when she saw the approaching car she did not wait for it to pass her, but "quickened her steps in order to get over in front" of the parked car, thinking that she had plenty of time to do so. She then said that the approaching car was "right up at the corner" of Spotswood avenue, on the near side of Spotswood, when she first saw it.

Mrs. Stark suffered a fracture of the pelvis, scars on her face, and a lot of bruises and contusions in and about her body.

William Spencer, a colored man who was employed at the delicatessen store visited by Mrs. Stark, testified that he heard a squeaking of the brakes of a car; that he went to the front of the store, but did not see the collision; that he saw Mrs. Stark lying in the street where she was struck; and that approximately two hours later that night, he went to the scene of the accident and upon an examination of the street found skid marks of automobile tires extending approximately a distance of thirty feet. Asked to point out a similar distance in the court room, he said it extended from where he was sitting to the end of the railing in the jury box. When asked by counsel for the plaintiff: "Do you call that thirty feet?" he answered, "Around thirty feet." Similar testimony was given by another employee of the delicatessen store, who accompanied Spencer to the scene, both as to the distance of the tire marks and the comparison of the distance with reference to the object in the court room.

The evidence does not show any actual or approximate measurements of the width of the streets involved, the distance of Spotswood avenue from Colley, or the comparative distance pointed out in the court room.

At the time of the accident, Miss Elizabeth Ramsey was riding with Ellis Hubbard in the front seat of his four-door sedan. She said Hubbard was driving very slowly and certainly not over fifteen or twenty miles per hour; that the headlights of his car were burning; that she and Hubbard were not engaged in conversation; that the car "was right up on the lady before I saw her;" that she did not see her before because of the "glare from the lights there;" that just before the collision occurred Hubbard applied his brakes and turned his car to the left; that Mrs. Stark was struck by the side of the right front fender; that the car was stopped quickly, and she and Hubbard got out and offered aid; and that Mrs. Stark was lying with her head towards the east side of Colley avenue, a little to the right side of the Hubbard car, which car was about five or more feet from the curb on the eastern side of Colley avenue.

At the request of the plaintiff three instructions were given informing the jury that the plaintiff had the right of way over an automobile at the intersection, defining the duty of the defendant, and telling the jury that if they believed that the defendant's intestate was guilty of negligence and such negligence was the proximate cause of the plaintiff's injury, she was entitled to recover, if she was free from negligence which contributed to such injury.

Five instructions were granted at the request of the defendant without objection. Among them instruction No. 2 reads as follows:

"The Court instructs the jury that the plaintiff cannot recover in this action for any injuries or damages to which her own negligence, if any, proximately contributed."

Another instruction dealt with concurring negligence, and two others with the duty of the plaintiff in crossing at a regular street intersection.

The plaintiff asked for and was refused the following instruction:

"The Court instructs the jury that if you believe from the evidence that the plaintiff was herself guilty of negligence, yet, if you further believe, from the evidence, that the defendant's intestate saw, or by the exercise of ordinary care could have seen plaintiff in time to stop or slow down his automobile to avoid striking her, then it was his duty so to do, even though plaintiff may have herself been guilty of negligence, and if defendant's intestate negligently failed to stop or slow down his automobile and struck her, you shall find for the plaintiff."

We have frequently had occasion to define and discuss the doctrine of last clear chance. In *Virginia Elec., etc., Co.* v. *Whitehurst*, 175 Va. 339, 8 S. E. (2d) 296, Mr. Justice Hudgins said at page 347:

"This doctrine is precisely what the name implies— that is, that one of the litigants had a last clear chance to avoid inflicting the damage or injury, notwithstanding the fact that the other litigant had previously placed himself or his property in a position of peril."

See 7 Michie's Digest Va. & W. Va. Rep. and Permanent Supplement, Negligence, section 28 *et seq.*, and numerous cases there cited.

The doctrine presupposes time for effective action and is not applicable where the emergency is so sudden that there is no time in which to avoid the accident. *Hutcheson* v. *Misenheimer*, 169 Va. 511, 194 S. E. 665. It cannot be applied unless there is evidence upon which it can be based. A mere probability is not sufficient. *South Hill Motor Co.* v. *Gordon*, 172 Va. 193, 200 S. E. 637. The burden is upon one who relies on the doctrine to present evidence affirmatively showing that by the use of ordinary care after his peril was discovered, there was, in fact, a last clear chance to save him. *Green* v. *Ruffin*, 141 Va. 628, 125 S. E. 742, 127 S. E. 486.

The doctrine does not apply where the negligence of both plaintiff and defendant continues down to the

moment of the accident, and it was never intended to supersede the defenses of contributory negligence or concurring negligence. *Hutcheson* v. *Misenheimer, supra; Harris Motor Lines* v. *Green,* 184 Va. 984, 37 S. E. (2d) 4; *Stuart* v. *Coates,* 186 Va. 227, 42 S. E. (2d) 311.

This leads us to a consideration of the evidence, and especially the testimony of the plaintiff. She is bound by her account of what she saw and did.

Mrs. Stark had the right of way in crossing at the intersection, (Va. Code, 1942, (Michie), section 2154 (126) (b) ); but she was not entitled to exercise that right by advancing in front of an approaching car dangerously near to her. It was her duty to look to her right when she reached the middle of the highway. It was also her duty when she saw the car to exercise care commensurate, under the circumstances, with the danger which the situation presented. *Thornton* v. *Downes,* 177 Va. 451, 14 S. E. (2d) 345; *Nelson* v. *Dayton,* 184 Va. 754, 36 S. E. (2d) 535.

Instead of stopping or taking steps for her own safety when she saw the car, she quickened her steps and hastened to put herself in its path. How many feet she advanced we do not know, the evidence not disclosing the width of the street nor her rate of speed. The positive evidence shows that the car was proceeding slowly, consequently she must have travelled an appreciable distance after seeing its lights before it travelled one-half of a block to the point where she was struck.

The plaintiff's own testimony convicts her of contributory negligence as the efficient and proximate cause of the collision. Her misjudgment of the distance of the approaching car and her quickened steps towards its oncoming path show that she failed to observe the ordinary rules of safety in the face of apparent danger.

On the part of the defendant, it is shown that an occupant of the car did not see Mrs. Stark until she was directly in front of the car. Hubbard was driving on his side of the street, and it is in evidence that he then immediately applied his brakes and swerved his car to the left to avoid

striking her. She was struck by the side of his right front fender. The car did not run over her or pass beyond her. It lacked a few inches of missing her.

Conceding that Hubbard should have earlier seen Mrs. Stark in the street, it cannot be conceded that he anticipated her advance in the path of his approaching car with full lights burning. There was nothing to put him on notice of her accelerated motion. There was no evidence that he had a clear chance, that is, time for effective action, to avoid striking Mrs. Stark after she quickened her steps towards his path.

We are unable to say the jury could have reasonably found, regardless of the state of negligence of the plaintiff, that the defendant, by the exercise of ordinary care, had a clear chance to save her from injury and failed to do so. The evidence presents simple questions of negligence and contributory negligence. The refused instruction was in direct conflict with instruction number 2, given without objection.

Every case rests upon its own peculiar facts. The cases relied on by the plaintiff may be readily distinguished upon the facts.

In *Yellow Cab Corp.* v. *Henderson*, 178 Va. 207, 16 S. E. (2d) 389, the pedestrian never saw the car that hit her, nor did she suddenly run across the street in front of it. The driver did not see the pedestrian on a wide, brightly lighted street, until after she was struck. The pedestrian was struck with great force and the car ran fifty-three feet after the collision.

In *Barnes* v. *Ashworth*, 154 Va. 218, 153 S. E. 711, the facts are entirely different from those here.

In *Dobson-Peacock* v. *Curtis*, 166 Va. 550, 186 S. E. 13, there was evidence that the car was travelling at a high rate of speed; that the driver had an unobstructed view of the pedestrian from the time she left the curb until she was struck; and that if the car had continued on its straight course instead of swerving to the right, it would have safely passed her. In that case the defendant saw the pedestrian

looking towards him; but mistakenly assumed that she was going to stop and let him pass.

Applying the rule stated, we think it manifest that the evidence in this case was insufficient to justify the granting of the refused instruction. We agree with the trial court, which had the opportunity to observe the attitude and demeanor of the witnesses and to evaluate, especially, the competency of their testimony as to certain circumstances scantily shown in the record, that the plaintiff failed to affirmatively show that the defendant had a last clear chance to avoid striking her. The judgment of the trial court is, therefore, affirmed.

*Affirmed.*

BUCHANAN, J., dissenting.

I think the evidence here makes a case in which the jury should have been permitted to decide whether the defendant's intestate had a last clear chance to save the plaintiff from her negligence, if she was negligent; and that it was error to refuse plaintiff's instruction D which correctly stated the doctrine.

The case is much like *Dobson-Peacock* v. *Curtis*, 166 Va. 550, 186 S. E. 13, and on the facts the jury question on last clear chance appears as clearly as in that case, or even more so. There the plaintiff was crossing the street between intersections, and had not the right of way, as did the plaintiff here. When she had about reached the center of the street she saw the defendant's car very rapidly advancing on her right and about 100 feet away. Thinking the driver had seen her and that she could safely cross ahead of the car, she hastened her steps and had gotten to the opposite curb when struck. The driver of that car had an unobstructed view of that plaintiff from the time she started across until she was struck. So did this driver as to this plaintiff. That plaintiff admitted she was in a state of negligence in crossing the street, but we held "that it was a question for the jury as to whether the driver, under all

of the facts and circumstances, had the last clear chance to avoid the collision." (166 Va. 557, 186 S. E. 15).

The driver in this case, as in that, had the duty to keep a reasonable lookout for pedestrians crossing the street. The driver in this case had the added duty of yielding the right of way to this pedestrian, "or to have changed his course, slowed down, or come to a complete stop 'if necessary', in order that the plaintiff might 'safely and expeditiously negotiate the crossing.' " *Bethea* v. *Virginia Elec., etc., Co.,* 183 Va. 873, 879, 33 S. E. (2d) 651, 653.

In the *Bethea Case* we said it was not necessary for the plaintiff to look continuously at the approaching bus as he crossed the street; but "if he was crossing at a proper place, the plaintiff had the legal right to assume that the driver would give him the right of way, a right which the drivers of motor vehicles too often overlook. Whether the plaintiff was exercising a reasonable lookout for his safety as he crossed the street was a question for the jury." (183 Va. 880, 33 S. E. (2d) 653).

The defendant is liable under the last clear chance doctrine where he, "being under a duty to keep a proper lookout for the plaintiff, by the exercise of ordinary care *should have seen* the plaintiff's peril in time to have avoided the injury by the use of ordinary care." *Dobson-Peacock* v. *Curtis, supra,* 166 Va. 555, 186 S. E. 15.

It was at least a jury question, as I see it, whether the driver here should have seen the plaintiff's peril in time to have avoided the injury. It is said that he was driving very slowly, not over 15 or 20 miles an hour. The plaintiff said she knew of nothing to keep him from seeing her. No other car was meeting him at the time; the weather was fair and the streets were dry; his headlights were on and his car was in good condition.

The driver's companion said she did not see the plaintiff until they were right on her; that plaintiff was then right in front of the right front fender, and about five feet from the east curb of Colley avenue. Asked why she did not

see the plaintiff sooner, her only explanation was, "Well, there was such a glare."

If there was a glare it must have come from street lights or other stationary lights, as there were no lights from an approaching car to bother. Another and more reasonable answer, as the jury might have found, was that the driver was not looking.

I do not understand the evidence to establish necessarily that this is a case where the plaintiff walked into the path of an approaching car under such circumstances that the driver could suppose she would stay out of his way. She looked and did not see this car when she started across. She was three-fourths of the way across when she saw it and it was then half a block away. That would put her about the middle of the driver's side of the street. She then had to go forward or back to get out of the way. She was asked, "You did not wait for it to pass?" She answered, "I could not." She thought she "had plenty of time to get out of his way" by going forward. She then had only two or three steps to take, she said, before she would have been in front of the parked car, and in safety. She almost made it, and was struck when she was only about five feet from the opposite curb.

The jury could well have said, under the circumstances, that the plaintiff was in full view of the driver from the time she started across the street. If he had been looking he could have seen her. If he had seen her, it was his duty to yield to her the right of way, and to have changed his course, slowed down, or completely stopped, if necessary, to avoid running her down. He did none of those things until too late. He ran against this plaintiff with no reasonable explanation to be found in the facts or circumstances as to why he did not see her and yield to her her superior right of passage.

EGGLESTON and STAPLES, JJ., concur in this dissent.