# Richmond

BERTHA LEE POINTER v. RICHARD ERNEST GREEN, JR.

June 16, 1952.

Record No. 3939.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*Clement, Conway & Winston,* for the plaintiff in error.

*Charles R. Warren, Jr.,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This action was instituted by Bertha Lee Pointer to recover damages for personal injuries suffered by her as a result of being struck by an automobile driven by Richard Ernest Green, Jr. A guardian *ad litem* was appointed for the defendant, a minor nineteen years of age. A response was filed in his behalf admitting the accident but denying that he was guilty of negligence in the operation of his automobile. The trial resulted in a verdict of $800 in favor of the plaintiff, which verdict the court set aside on the ground that the plaintiff was guilty of contributory negligence as a matter of law. Judgment was then entered for the defendant.

Plaintiff assigns error to the granting and refusal of instructions and to the action of the trial court in setting aside the verdict and entering judgment for the defendant. She asks that she be granted a new trial, or, in the alternative, that judgment be entered in her favor according to the jury's verdict.

The accident occurred on December 6, 1950, at what is known as the Mount Vernon Church intersection in Danville, Virginia. This is an intersection where West Main and South Main streets come together at about a thirty-degree angle and continue northeast as Main street. Mount Vernon Church is located on the triangular shaped lot, formed by the convergence, facing Main street. At the intersection is a traffic light which operates as a stop and go light for traffic towards Main street from West Main and for Main street traffic going out on South Main street. It does not stop traffic on Main street going out on West Main or on South Main going into Main. Also there is a clearly marked crosswalk for pedestrians over West Main street from the south to the north side.

The evidence on behalf of the plaintiff was as follows:

On the day of the accident, Bertha Lee Pointer, a colored person, on her way to her place of employment, reached the above described intersection at about 8:30 a. m. She had walked from her home on South Main to the sidewalk in front

of Mount Vernon Church for the purpose of taking a bus routed west on West Main street. Upon her arrival in front of the church, she observed two or three automobiles bound toward Main street from West Main stopped by a red traffic light, and a westbound passenger bus parked at the bus stop directly across the street from the church. With the traffic light in her favor, with respect to traffic coming from her left, she looked to her right, and seeing no car approaching, started to cross the street within the crosswalk for pedestrians. She said she remembered reaching "about the middle way of the street," but nothing thereafter.

The physical evidence shows she was struck by an automobile approximately twelve feet from the curb on the far side. Glass from the left front headlight of the car was found in the crosswalk. She was knocked twelve to fifteen feet by the impact, and suffered multiple contusions of the body, especially on her right side; but no fracture of any bone. She was taken to a hospital, discharged therefrom on December 22, 1950, and required medical care until February 15, 1951.

The car which struck her was a Buick automobile driven by Richard Ernest Green, Jr., who was accompanied by two young women, all on their way to school. The Buick came to a stop with its front wheels approximately in the center of the crosswalk, and abreast of and within two or three inches of the left rear wheel of the parked bus. The rear of the bus extended slightly over the crosswalk. There were tire skid marks on the street made by the Buick, extending back of it a distance of thirty feet.

Defendant and his witnesses gave the following account of the accident:

The defendant and a passenger in his car testified that they saw the plaintiff in the middle of the street when their car was stopped by a red traffic light at the corner of Main and Broad streets, a point at an undisclosed distance north of the scene of the accident. When the light changed to green, they proceeded toward West Main street, at a speed of between fifteen and twenty miles per hour. Both of them said they observed that the plaintiff did not look towards their car at any time. Green said he blew his horn and reduced his speed, assuming that the plaintiff would stop. He said it seemed to him that she did stop, and that as he "got right at her she ran towards

the car, still looking up the street, to the back of the bus." He "hit" his brakes when he saw her start running, and "cut" toward the bus trying to keep from hitting her. He also said: "Well, I was parked at the light where the arrow is giving me the right of way when I saw her come out." His passenger said that Green "had blown his horn before I looked to see her in the street;" and that the plaintiff didn't come to a complete stop at any time, but took a few steps and then started running for the bus.

A witness, whose car was stopped west of the crosswalk on West Main street by the red stop light, said he first saw the plaintiff running from the curb in front of the church into the street as the Green car approached, and next saw her when the car hit her. He did not know whether she stopped in the street or not.

At the conclusion of plaintiff's evidence, the court overruled a motion to strike made upon the ground that it failed to show negligence on the part of the defendant, and, at the conclusion of all the evidence, overruled a motion to strike made on the same ground, and on the further ground that the evidence showed that the plaintiff was guilty of contributory negligence. Over the protest of the plaintiff, based on the fact that there was no plea of contributory negligence, the court instructed the jury that she was not entitled to recover if they believed she was guilty of negligence which was a contributing cause of the accident. Plaintiff thereupon asked for an instruction on the doctrine of the last clear chance, which the court refused to give.

Section 46-244, Code of Virginia, 1950, provides as follows:

"Right of way of pedestrians.—The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary lines of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices.

"No pedestrian shall enter or cross an intersection regardless of approaching traffic.

"The drivers of vehicles entering, crossing or turning at intersections shall change their course, slow down or come to a complete stop if necessary to permit pedestrians to safely and expeditiously cross such intersection."

■ The jury, which heard and saw the witnesses, and were no doubt familiar with the scene of the accident, decided in favor of the plaintiff. They were entitled to believe that the plaintiff was proceeding across the street, within the crosswalk for pedestrians, and had the right of way over the defendant, whether she was walking or running. It was for them to say whether she exercised reasonable care in crossing the intersection, under the circumstances. Whether her testimony should have been accepted or rejected, or what weight should have been accorded to it were questions peculiarly within their province. It was also for them to say whether the defendant, under the circumstances, exercised the duties required of him under Code, § 46-244.

■ We do not think the evidence of the plaintiff showed that she was guilty of negligence as a matter of fact or of law. Consequently, the court erred in granting any instruction with regard to contributory negligence. Rule of Court 3-18 (h) provides that: ''Contributory negligence shall not constitute a defense unless pleaded or shown by the plaintiff's evidence.''

See also Virginia Code, 1950, § 8-112.

Accordingly, it is not necessary to consider the refusal of the court to give an instruction relating to the doctrine of the last clear chance.

■ The jury could well have believed that the defendant saw the plaintiff, as he said he did, when she entered the intersection. Certainly, in broad daylight, she was in his full view in the middle of the street when he was stopped by a traffic light some distance away. Seeing her in the intersection, and observing particularly that she was looking away from him, it was his duty to yield her the right of way by changing his course, slowing down, or coming to a complete stop, if necessary to avoid striking her. He did not stop, thinking that she would, and his erroneous assumption does not justify his failure to yield to her the superior right of passage. She did not lose her right of way by merely running across the street or by hurrying to get out of defendant's way. If the blowing of his horn warned her of his near approach and personal danger, she did what any other prudent person might have done in making a sudden dash to get out of the way of his car.

In *Sawyer* v. *Blankenship,* 160 Va. 651, 658, 169 S. E. 551, this is said:

"The duty of a motor vehicle driver on approaching an intersection is to keep a vigilant lookout for pedestrians between curbs on the traveled portion of the highway, and when pedestrians are negotiating the crossing or about to step from the side into traffic lanes, to operate his car at such speed and under such control that he can readily turn one way or the other, and, if necessary, bring his machine to a stop in time to avoid injury to pedestrians."

In *Lucas* v. *Craft,* 161 Va. 228, 235, 170 S. E. 836, we said:

"At intersecting streets where there are neither traffic lights nor traffic officers, the pedestrian has a superior right—that is, the right to cross from one side of the street to the other in preference or priority over vehicles—and drivers of vehicles must respect this right and yield the right of way to the pedestrian. The pedestrian's right of way extends from one side of the street to the other. It does not begin at any particular point in the intersection nor does it end at any particular point. It begins on one side of the street and extends until the pedestrian has negotiated the crossing."

Added to that are the further undisputed facts here that the plaintiff was walking in a clearly marked crosswalk for pedestrians, when traffic to her left had been stopped by a red stop light, and she was in full view of the defendant, whose movement was not regulated by traffic officers or traffic direction devices. It was his duty to obey the statute.

Defendant relies upon the cases of *Stark* v. *Hubbard,* 187 Va. 820, 48 S. E. (2d) 216; *Arlington, etc., Motor Transp. Co.* v. *Simmonds,* 182 Va. 796, 30 S. E. (2d) 581; *Virginia Elec., etc., Co.* v. *Blunt,* 158 Va. 421, 163 S. E. 329; and *Thornton* v. *Downes,* 177 Va. 451, 14 S. E. (2d) 345. These cases may be distinguished on the facts and on the points of law involved in each case.

In *Stark* v. *Hubbard, supra,* the plaintiff had taken about two or three steps into the street when she saw a car coming. She misjudged its speed and distance and quickened her steps, thinking she had time to cross in front of it; but ran right in front of it. We held that the evidence did not justify an instruction under the doctrine of the last clear chance.

In the last two cited cases, recoveries for the plaintiffs were sustained under facts strikingly different from those here.

Here, the evidence of the plaintiff showed that she exercised

ordinary care for her own safety as she approached the intersection. She looked out for vehicles approaching from the right, saw none, knew that traffic on her left was stopped by a traffic light, and proceeded to avail herself of her right of way. The defendant, on the other hand, disregarded the plain provisions of the law enacted to cover such a situation, and as a result struck and injured the plaintiff.

The court gave a number of the usual instructions relating to the duties and obligations of the parties. In addition, the jury were told "that the plaintiff had the right of way over the defendant, if she was crossing the street at an intersection," and the measure of her damages, if she was entitled to recover.

██ We find no merit in the contention that the action of the court with respect to the giving or refusal of instructions was reflected "by the depressed verdict so that it was patently inadequate." The amount of the damages was entirely unrelated to the questions involved in instructions relating to contributory negligence and last clear chance. There was an instruction which correctly submitted the measurement of damages to the jury. The plaintiff obtained a favorable verdict, and there is no suggestion that the jury were motivated in arriving at the amount of damage by bias, or prejudice, or misunderstanding of the law or the facts relating thereto. Nor can it be said that the amount awarded is so inadequate as to shock our conscience. The award covered the amount of plaintiff's medical expenses and loss of time from work, plus an almost equal amount for her pain and suffering.

For the reasons stated, we are of opinion to reverse the judgment of the trial court, reinstate the verdict of the jury, and enter final judgment according to that verdict.

*Reversed and final judgment.*