# Richmond

## Lula Hattie Davis, Administratrix, Etc. v. John Wilcox Scarborough, Etc.

April 26, 1957.

Record No. 4647.

Present, Hudgins, C. J., and Eggleston, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*Paul M. Lipkin* (*Goldblatt & Lipkin*, on brief), for the plaintiff in error.

*Jack E. Greer* (*Lawson Worrell, Jr.* and *Williams, Cocke, Worrell & Kelly*, on brief), for the defendant in error.

SNEAD, J., delivered the opinion of the court.

On June 20, 1955, at approximately 1:40 A. M., Loamike Tex Davis was in the act of changing the left rear tire of his automobile, which he had parked partly on the travelled portion of Virginia Beach Boulevard, also known as Highway 58, headed in a westwardly direction toward the City of Norfolk. A car operated by John W. Scarborough and proceeding westwardly collided with the left rear of the parked car and killed Davis instantly. Lula Hattie Davis, decedent's Administratrix instituted action for damages under the death by wrongful act statute (Sec. 8-633 *et seq.* Code 1950) against John Wilcox Scarborough and Ruth W. Scarborough, driver and owner respectively of the vehicle that struck decedent.

The parties will be at times referred to as plaintiff and defendant in accordance with their respective positions in the trial court.

At the conclusion of plaintiff's evidence, defendants moved to strike and the motion was sustained as to defendant, Ruth W. Scarborough, but overruled as to defendant, John Wilcox Scarborough. At the conclusion of all the evidence the motion was renewed as to Scarborough and again overruled. The jury returned their verdict for the defendants and judgment was entered thereon. We granted plaintiff an appeal as to defendant, John Wilcox Scarborough, and judgment became final as to defendant, Ruth W. Scarborough.

Plaintiff appeals on the ground that the court erred in overruling her motion to set aside the verdict and grant a new trial; in refusing

to grant plaintiff's instructions Nos. 3 and 7, and granting defendant's instructions D-2, D-8 and D-11; and in sustaining defendant's objection to questions propounded to Hardy W. Gray, a witness for plaintiff, concerning lights on the back of the Davis automobile.

The defendant assigns cross-error and contends that no actionable negligence was shown and that plaintiff's decedent was guilty of contributory negligence as a matter of law.

At approximately 11 P. M. on June 19, 1955, Davis called at the home of his friend, Hardy W. Gray, in Norfolk, and offered to drive Gray to Oceana, where Gray had been compelled to leave his car due to mechanical trouble, and push the car back to Norfolk or to an open garage for repairs. Gray was reluctant to go and suggested that the trip be delayed until the next day. At the insistence of Davis, they proceeded to Oceana that night. With the lights of both cars burning, Davis proceeded to push Gray's 1941 Buick, bumper to bumper, toward Norfolk on the Virginia Beach Boulevard. After they had travelled about a mile, the left rear tire of the Davis car went flat. They could not change the tire for the handle of their jack was missing. Traffic had lessened considerably. Davis, with his tire flat, continued to push Gray's car for another 5 miles to approximately 400 yards west of Chinese Corner, where they stopped opposite Hampton's Market, which was open for business.

At this point Virginia Beach Boulevard is a four lane highway, divided by a concrete curbed island 2 feet wide. There are two lanes for westbound traffic and two lanes for eastbound traffic. There is a broken white line separating the two lanes in the highway for eastbound traffic and also for the westbound traffic and each lane is approximately 11 feet wide. Feeder lanes are on each side of the highway and separating the feeder lanes from the highway are cables supported by posts. There is an entrance to the feeder lanes at Chinese Corner and another 475 feet beyond the point where Davis parked his vehicle. The evidence as to what portion of the car was on the hard surface varied from one foot to three-fourths of the car width. The highway is straight for at least three-tenths of a mile east of and a considerable distance west of the parked car. The shoulder on the right of the westbound traffic lane is about 3 feet wide. At Chinese Corner there are a service station and several other business establishments, but all were closed at the time.

Davis walked across the highway and borrowed a bumper jack from the operator of the market and proceeded to change the tire.

In the meantime, according to Gray, his car was running on about 2 cylinders and he proceeded westwardly to the entrance of the feeder lane, made a right turn and came back on the north feeder lane to a point almost opposite Davis' parked car. But Scarborough and his passenger, Gerald Sechrest, denied seeing Gray's car or its lights.

Scarborough testified that he and Sechrest were returning to their home in Petersburg; that he was driving about 6 inches from the shoulder of the highway on his right, with his low beam lights on, between 40 and 45 miles per hour, when he observed an object in the highway about 70 to 75 feet ahead; that he then realized it was an automobile, applied his brakes and "whipped" his car sharply to the left to avoid striking it; that his vehicle struck the left rear of the Davis automobile and he temporarily lost control of his car and crossed the concrete curbed island dividing the eastbound traffic lanes from the westbound traffic lanes, after which he regained control of his car and proceeded westwardly on the eastbound lane until he reached the first break in the island and turned to the north feeder road, parked and returned to the scene where he observed the tragic results of the accident. He further stated that the highway was damp; that the Davis car was parked from one-half to three-fourths on the hard surface of the highway without lights and that lack of illumination prevented him from seeing the car sooner.

The Davis vehicle was driven forward approximately 25 feet and plaintiff's decedent was knocked 35 feet as a result of the impact.

There was a conflict in the evidence as to whether rear lights were burning on the Davis car. Sechrest corroborated Scarborough and said none was burning. Trooper F. M. Page, Jr., who arrived at the scene about 10 minutes after the collision, stated the light switch was off and he turned on the switch and the front lights worked, but he did not check to see if the rear lights burned. Christopher Flowers said the headlights were on. Vernon Deal testified the taillights were lit. Gray stated that the light beneath the license plate on the rear of the Davis vehicle was on.

However, upon being questioned as to how well the area was lighted where the Davis car was standing and how much of it was on the hard-surfaced part of the road when struck, Gray testified as follows:

"Q. Was there any light at the point where the Davis car was from any other object or place?

"A. Oh, yes; yes, of course. That market across the street was all lit up.

"Q. I realize that. Was there any light from that at that point where the Davis car was sitting?

"A. From the market, you mean?

"Q. Yes, sir.

"A. Yes, sir. You could clearly see, because after it was all over I went across the street, and from over there, looking over on this car you could very plainly see the car sitting over there.

     *      *      *      *      *      *      *

"Q. And how far, Mr. Gray, was the lefthand side of Mr. Davis' car on the paved portion, in your estimation?

"A. It could not have been over a foot, because he had gotten over as far as he possibly could."

According to F. G. Hampton, operator of the market, taillights were burning on the Davis car within three minutes after the accident and there were 8 flood lights and a large neon sign burning on his establishment, which lit up the feeder lane in front of his market and the reflection carried across the highway. Larry W. Flowers stated that these lights illuminated the area enough for him to see Davis' pocket book on the highway.

On defendant's assignment of cross-error it is insisted that there was no actionable negligence on defendant's part and decedent was guilty of contributory negligence as a matter of law.

This challenges the sufficiency of plaintiff's evidence to sustain a recovery in any event and on this assignment all conflicts in the testimony and all reasonable inferences deducible therefrom must be resolved in plaintiff's favor.

Thus tested, the evidence shows that decedent's automobile was standing in a well lighted area and at least one light was burning on its rear under the license plate, yet defendant never saw that car or Davis standing at its rear until within 70 or 75 feet of the vehicle. This is sufficient to warrant a finding that defendant failed to keep a proper lookout for other vehicles or objects upon the road and was guilty of actionable negligence in that respect.

[■ The question of whether or not decedent was guilty of contributory negligence as a matter of law presents a more difficult problem: Sec. 46-256 Code of 1950 provides as follows:

"No vehicle shall be stopped in such a manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency as the result of an accident or mechanical breakdown, in which case the vehicle shall be removed from the highway as soon as possible; and such removal may be ordered by a police officer at the expense of the owner if the disabled vehicle creates a traffic hazard.

"No vehicle shall be stopped except close to and parallel to the right-hand edge of the curb or roadway, except that a vehicle may be stopped close to and parallel to the left-hand curb or edge of roadway on one-way streets or may be parked at an angle where permitted by the State Highway Commission or local authorities with respect to streets and highways under their jurisdiction."

This section forbids one to stop a vehicle on the highway "in such a manner as to impede or render dangerous the use of the highway by others", but the prohibition is not absolute. It is not made unlawful to stop unless such action impedes traffic or renders use of the highway dangerous.

Undoubtedly it would have been wiser had Davis taken the precaution to remove his disabled car completely from the highway. Yet the two traffic lanes were together 22 feet wide and decedent's vehicle was standing in a rather well lighted area and only partly on the hard surfaced roadway.

Whether the manner and place where Davis stopped his car to replace the useless tire were such as to impede traffic or render dangerous the use of the highway was a factual matter to be determined by the jury, and if so, whether or not these facts contributed to the collision was also, under all the circumstances, an issue of fact to be determined by the jury. This being true, the court committed no error when it refused to strike plaintiff's evidence, and we find no merit in the assignment of cross-error.

■ Instruction No. 3 tendered by plaintiff was refused. It reads:

"The court instructs the jury that if you believe from a preponderance of the evidence that John Wilcox Scarborough did not keep a reasonable lookout, and in the exercise of reasonable care, he should have seen Loamike Tex Davis in time to have avoided striking him, and that his failure to keep a reasonable lookout was the sole proximate cause of Davis's death, that Davis was exercising reasonable care for his own safety, then you should find for the plaintiff."

This instruction was refused on the ground that it was repetitious of instruction No. 2, which was granted.

Instruction No. 3 presented the sole question of whether or not defendant had kept a reasonable lookout. That issue was vitally important for it went directly to the merits of the case. Instruction No. 2 told the jury that the law required that a driver have headlights sufficient to reveal persons and objects at least 350 feet ahead when the lights were on upper beam and to reveal persons and objects at least 100 feet ahead when the lower light beam was used. Sec. 46-277 Code 1950. It also presented the question of whether or not defendant failed to keep a reasonable lookout, and in that respect the two instructions were somewhat repetitious. Yet instruction No. 3 had to do solely with whether or not defendant kept a reasonable lookout, and No. 2 had to do primarily with whether or not defendant's car was equipped with proper headlights. Instruction No. 3 should have been given, and upon retrial of this case, the latter part of instruction No. 2, having to do with defendant's keeping a reasonable lookout could be omitted.

Instruction D-8 granted over plaintiff's objection reads as follows:

"The Court instructs the jury that the defendant had a right to assume that his lane of travel was free from any obstruction, and he had a right to rely upon this assumption until, in the exercise of ordinary care, the contrary appeared or should have appeared to him."

Plaintiff's objection to this instruction was that it was misleading in that the jury might infer from it that defendant driver was relieved of the duty to keep a reasonable lookout. The instruction may be subject to this criticism, and if tendered again the following phrase should be added at the end thereof: "but this does not relieve him of the duty to keep a reasonable lookout."

We find no error in the granting of instructions D-2 and D-11.

Plaintiff maintains that the doctrine of last clear chance applies and, therefore, instruction No. 7, tendered by her, should have been granted and cites *Greear* v. *Noland Company*, 197 Va. 233, 89 S. E. 2d 49 in support of her contention. However, the facts in that case are distinguishable from those in the case at bar. In *Greear* v. *Noland Company, supra,* the defendant's truck driver testified that when 300 yards away he first saw plaintiff standing beside the driver's door of a station wagon parked on the shoulder of the highway and that he maintained the speed at which he was travelling until he

struck plaintiff. The truck driver gave no reason why he made no effort to avoid striking plaintiff. He could have avoided the accident by a slight turn to the left. The court held that since the evidence disclosed that the defendant's agent saw plaintiff in danger who was not aware of the risk, and had ample time and opportunity to avoid striking him but failed to do so, plaintiff was entitled to an instruction on last clear chance.

In *Burton* v. *Oldfield*, 194 Va. 43, 72 S. E. 2d 357, a case quite similar to the case at bar, plaintiff's decedent and four other sailors were pushing a disabled automobile in the right-hand lane of Virginia Beach Boulevard, within several miles of the point of collision in the present case, when he was struck and killed by defendant's vehicle. Plaintiff's decedent was at or near the left rear fender when struck. Defendant stated that his lights were on low beam and visibility was not normal, and that he saw plaintiff's intestate when he was approximately 100 feet from him. According to his evidence, his speed was between 50 and 55 miles an hour, but according to plaintiff's evidence the rate of speed was faster. The court held that the doctrine of last clear chance was not applicable under the evidence and stated:

"The last clear chance doctrine presupposes time for effective action and is not applicable when time is too short to avoid the accident by exercising reasonable care. *Hutcheson* v. *Misenheimer*, 169 Va. 511, 194 S. E. 665; *Stark* v. *Hubbard*, 187 Va. 820, 48 S. E. 2d 216. The evidence does not show that under the prevailing conditions there was time for effective action after the defendant discovered or should have discovered that the plaintiff was in a perilous position."

In the instant case, the uncontradicted evidence is that defendant driver was operating his vehicle between 40 and 45 miles an hour when he saw an object on the highway 70 to 75 feet ahead and that when approximately 50 feet from the object he realized it was an automobile. If the decedent was negligent in attempting to replace the tire where his vehicle was parked, he was not helpless and he could have removed himself from his position of danger at any moment before the collision. He was inattentive to his danger but not helpless. Although defendant driver attempted to avoid a collision, he did not have enough time and distance for effective action after he discovered decedent's peril. The trial court was correct in refusing to grant plaintiff's instruction No. 7.

The first question asked Gray by counsel for plaintiff concerning lights on the Davis car was, "Did you observe whether or

not the light in the back of that car was burning at the time you took your eyes off of it?" and he replied, "The light was on." Then he was asked, "What light?", to which he answered: "There is a little light in his trunk door about so big." The witness was then presented plaintiff's exhibit 7 and was requested to point out to the jury where the light was that he saw burning and he answered, "This light (pointing)." Whereupon, counsel for defendant inquired, "You think that was burning?" The witness replied: "I think that was burning." Counsel for plaintiff then asked, "Was the taillight of the Davis car burning?" Counsel for defendant objected on the ground that this was a leading question and he further *erroneously* stated that counsel for plaintiff "has asked him what lights were burning on the back of the car." The court sustained the objection to the question as leading.

Later Gray was asked by counsel for plaintiff, "Do you know whether there was a light on the left rear fender of that car?" Counsel for defendant objected, stating that the question had been previously asked. The objection was sustained and an exception was noted.

When Gray was later asked "Were the lights on at that time?", counsel for defendant again objected, and the court heard argument of counsel in the absence of the jury.

Counsel for defendant argued that Gray was asked on direct examination whether there were any lights on the rear of the Davis vehicle and that his reply was "I think this light was on." He also stated that Gray had been asked "half a dozen times whether there were any other lights on the back of that car." He contended that counsel for plaintiff should not be permitted to continue to lead the witness and that he should be precluded from pursuing the question of lights. Counsel for plaintiff asserted that because the witness named one light, he should not be precluded from inquiring as to whether there were any more burning. The court sustained the objection and plaintiff excepted to the ruling on the grounds that it excluded from the jury relevant and material evidence.

It appears to us that there was a misconception by counsel for defendant and the court as to the first question asked the witness concerning lights on the Davis vehicle. The question was asked whether he observed "the light in the back of that car was burning * * *", and not "What lights were burning" or "any lights" on the rear of the car. This misconception was belabored by defendant's

counsel and resulted in the refusal by the court to permit plaintiff's most important witness to testify in regard to the taillight, which evidence would have been relevant and material.

While it is true the trial court properly ruled that some of the questions with which we are concerned were leading, the court could have with propriety suggested that they be asked in proper form, thus making available for the jury evidence which was so vital to plaintiff's case.

Defendant argues that, assuming prejudicial error was committed, there is nothing in the record to indicate what the answer of the witness would have been and also nothing to show whether its exclusion might be prejudicial. We think it can be fairly inferred from the colloquy between the court and counsel, in the absence of the jury, that Gray would have testified that the taillight was burning at the time of the accident, and, unquestionably, in view of the conflicting evidence about the lights, the plaintiff was prejudiced by reason of the exclusion of this evidence.

The judgment appealed from is reversed and the case is remanded for a new trial as to defendant, John Wilcox Scarborough.

*Reversed and remanded.*

WHITTLE, J., dissenting.

In all deference, I cannot subscribe to the reasoning employed in the majority opinion.

The facts show that this trip was conceived in negligence and culminated in tragedy. Plaintiff's intestate insisted upon making the trip for the purpose of pushing his friend's incapacitated automobile from where it was stored in a place of safety, over the highly traveled Virginia Beach Boulevard in the dead of night. He proceeded on this dangerous venture for a mile when the rear tire on his (the pushing) car "went flat", and instead of removing both incapacitated vehicles from the highway "as soon as possible", in compliance with § 46-256, Virginia Code, 1950,[1] he continued pushing one disabled car with the other disabled car for a distance of four miles. In traveling this distance he passed numerous places where both vehicles

---

[1] A violation of this section is negligence. See *Powell* v. *Virginian Ry. Co.*, 187 Va. 384, 390, 46 S. E. 2d 429, 432; *Moore* v. *Virginia Transit Co.*, 188 Va. 493, 497, 50 S. E. 2d 268, 271; *Birtcherd Dairy* v. *Edwards, Adm'r.*, 197 Va. 830, 833, 91 S. E. 2d 421, 423.

could (as mandatorily required by statute) have been removed from the highway. Why Davis stopped the "pushing" operation at the particular point on the highway is not shown except he suddenly came to the conclusion that he would change the tires. The evidence is conclusive that he could have traveled to the adjacent service road and there safely made the change. But instead, he stopped short of safety, and with his vehicle partly blocking the lane of travel, and with his back turned to oncoming traffic, he undertook to change the tire, being thus engaged when defendant's car, traveling at less than the normal rate of speed, struck and killed him.

In my view it is clear that Davis was guilty of contributory negligence as a matter of law. Therefore, the verdict of the jury which found for the defendant and upon which the trial court entered judgment should not be disturbed. The errors complained of do not affect this result.

In my opinion the majority overlook the concession that plaintiff's decedent was guilty of contributory negligence. Plaintiff takes the position in her brief that if the last clear chance doctrine does not apply then in that event she has no case. She argues:

"* * * It is earnestly submitted that whether the defendant, after seeing Davis, realized or ought to have realized his peril in time to avert the accident by using reasonable care was a question for the jury's determination. The defendant admitted he realized the peril some 40 to 50 feet from Davis. Whether that distance under the circumstances was sufficient for effective action should have been left to the jury's determination *under the last clear chance instruction.*

" 'The contributory negligence approach does not provide a guide * * * in the case of the plaintiff who is not helpless but only unconscious of his situation.' *Greear v. Noland Co., supra* (197 Va. 233, 238, 89 S. E. 2d 49, 51). *Plaintiff submits that the instant case comes directly within this doctrine.* The jury should have been allowed to determine (1) if decedent was unconscious of his peril; and if so, (2) if the defendant could have averted the accident after he realized or ought to have realized the peril.

"It is therefore submitted that this case should be reversed and remanded *for the failure of the trial court to instruct on last clear chance."* (Italics supplied)

Thus plaintiff, in her attempt to employ the last clear chance doctrine, concedes negligence, and the majority opinion having correctly

decided that the doctrine does not apply, and since the doctrine of comparative negligence is not in vogue in Virginia, there can be no recovery.

Undoubtedly the jury plainly understood the situation when it rendered its verdict for the defendant, and in my view the lower court's judgment entered thereon should not be disturbed.