COURT OF APPEALS OF VIRGINIA

Present:   Judges Huff, Fulton and White
Argued at Norfolk, Virginia

UNPUBLISHED

PATRICIA SPIVEY

v.        Record No. 0713-22-1

ANNITAVIA LATRICE THOMAS

MEMORANDUM OPINION[*] BY
JUDGE JUNIUS P. FULTON, III
MARCH 21, 2023

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Tyneka L.D. Flythe, Judge

Alexander Christopher Zaleski (Allstate House Counsel, on brief),
for appellant.

Kevin D. Sharp (Eric K. Washburn; Shapiro, Washburn & Sharp,
PC, on brief), for appellee.

While crossing the road inside a crosswalk, Annitavia Latrice Thomas was struck by a car

driven by Patricia Spivey.  Neither party saw the other prior to the collision.  Thomas sued for

damages.  At the conclusion of Thomas's evidence, Spivey made a motion to strike on the grounds

that Thomas had been contributorily negligent as a matter of law, thus barring any recovery.  She

renewed the motion at the close of all the evidence.  The trial court denied Spivey's motions and the

jury returned a verdict in favor of Thomas, awarding her damages totaling $50,000.  Spivey now

appeals the trial court's ruling that Thomas was not contributorily negligent as a matter of law, as

well as its refusal of two jury instructions.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

BACKGROUND

At approximately 5:50 a.m. on October 16, 2020, in the City of Newport News, Thomas was walking in a northwesterly direction along the sidewalk on Marshall Avenue on her way to her job as a security guard at a Food Lion grocery store. It was dark and rainy, and Thomas was dressed in her dark gray and black security uniform. When Thomas arrived at the intersection with Briarfield Road, she stopped and looked for traffic. Thomas did not see any cars in the intersection and when her light turned green, she turned left and began crossing Marshall Avenue at the crosswalk to travel along Briarfield Road. When Thomas was approximately halfway across the street, she was struck on her right side by Spivey's car and thrown to the ground. Thomas never saw Spivey's vehicle.

Spivey was traveling westward along Briarfield Road and made a left turn onto Marshall Avenue. She likewise admitted that although her headlights and the streetlights were on and she was not otherwise distracted, she did not see Thomas prior to hitting her; "[a]ll [she] felt was a bump." Spivey testified at trial that she turned at a green arrow, which Thomas disputed, claiming that she had a green signal to cross at the time of the collision. There were no witnesses to the accident.

Thomas agreed on cross-examination that although she looked both ways to ensure there was no traffic before entering the crosswalk, she did not turn and look again after she began to cross. She further agreed that "if [she] had looked, [she] would have seen the car," and "the only reason [she] didn't see it is because [she] didn't look."

At trial, the court refused a modified version of Model Jury Instruction 10.020 informing the jury that (modified portions in italics):

> The duty to keep a proper lookout requires a driver *or pedestrian* to use ordinary care to look in all directions for a vehicle or person that would affect her driving *or path of travel*, to see what a reasonable person would have seen, and to react as a reasonable

- 2 -

person would have acted to avoid a collision under the circumstances.

The court also refused an instruction that:

> The duty of the Plaintiff to look for traffic does not cease but becomes more insistent when she comes to the middle of the street, before stepping into the lane of travel of vehicles coming from her right.
>
> If the Plaintiff fails that duty to look for vehicles coming from her right, then she is negligent.

The language in this second rejected instruction was derived from the Virginia Supreme Court's opinion in *Hopson v. Goolsby*, 196 Va. 832, 838 (1955).

## ANALYSIS

### 1. *Contributory Negligence*

"It is well-settled that 'a party who comes before us with a jury verdict approved by the circuit court "occupies the most favored position known to the law."'" *N. Va. Kitchen, Bath & Basement, Inc. v. Ellis*, 299 Va. 615, 622 (2021) (quoting *Ravenwood Towers, Inc. v. Woodyard*, 244 Va. 51, 57 (1992)). "As a general rule, [w]e will not set aside a [circuit] court's judgment sustaining a jury verdict unless it is 'plainly wrong or without evidence to support it.'" *Id.* (alterations in original) (quoting *Parson v. Miller*, 296 Va. 509, 524 (2018)). Where the circuit court has "declined to strike the plaintiff's evidence or to set aside a jury verdict, the standard of appellate review in Virginia requires this Court to consider whether the evidence presented, taken in the light most favorable to the plaintiff, was sufficient to support the jury verdict in favor of the plaintiff." *Id.* (quoting *Parson*, 296 Va. at 523-24).

> The question as to whether a pedestrian, who is struck by an automobile . . . at or near a regular street crossing, or at a place customarily used as a crossing, exercised proper care, or has been guilty of contributory negligence which will defeat his recovery for injuries sustained by such collision, is almost invariably one for the jury.

*Danner v. Cunningham*, 194 Va. 142, 146-47 (1952) (quoting 2 Blashfield Cyc. of Automobile Law 1020). The issue of contributory negligence becomes a question of law for the court "only when reasonable minds could not differ." *Meeks v. Hodges*, 226 Va. 106, 109 (1983).

It is axiomatic that a pedestrian endeavoring to cross the roadway owes a reasonable duty of care. *See, e.g.*, *Hopson*, 196 Va. at 837-39; *Hooker v. Hancock*, 188 Va. 345, 355-56 (1948); *Stark v. Hubbard*, 187 Va. 820, 826 (1948). In *Thornton v. Downes*, 177 Va. 451, 458 (1941), our Supreme Court held that:

> When a pedestrian . . . steps from the sidewalk into the street at an intersection, the law imposes upon him the legal duty of ascertaining if any vehicular traffic is approaching from the left. If the way be clear, he has the right to proceed to the comparative zone of safety, which is the center of the street. Upon his arrival at the center of the street, he is under the legal duty of looking to his right for approaching vehicles, and while the statute . . . accords him the right of way, he would be guilty of contributory negligence . . . if he attempted to assert his right of way in the face of approaching traffic dangerously near to him.

*See also Stark*, 187 Va. at 826 (reiterating the pedestrian's duty "to look to her right when she reach[es] the middle of the highway").

In *Hopson*, the Court held that "[t]he duty of the . . . plaintiff to look did not cease but became more insistent when she came to the middle of the street and was stepping into the travel lane of cars coming from her right." 196 Va. at 838. And "if a person having a duty to look 'carelessly undertakes to cross without looking, or, if looking, fails to see or heed traffic that is obvious and in dangerous proximity and continues on into its path, [s]he is guilty of negligence as a matter of law.'" *Id.* at 839 (quoting *Hooker*, 188 Va. at 356). The plaintiff in *Hopson* failed to perform that duty and "necessarily was guilty of contributory negligence" because "[h]ad [the plaintiff] performed that duty, she would have seen the defendant's car approaching dangerously near." *Id.*

- 4 -

Unlike in this case, the plaintiff-pedestrian in *Hopson* crossed not at a crosswalk but "210 feet north of" an intersection "into which traffic moves from five directions." *Id.* at 833-34. She testified that before crossing, "she looked up and down the street twice and nothing was passing," but "that after she started across she did not again look to her right or to her left, but looked straight ahead and did not see the car that struck her and did not hear it until the noise of the brakes." *Id.* at 835. At the time of the collision, the defendant in *Hopson* was driving straight along the road the plaintiff sought to cross. *Id.* Consequently, as the Court remarked, "[a] glance to [the plaintiff's] right would have warned her of the danger of going ahead. There was nothing to keep her from looking, and there was every reason why she should look." *Id.* at 838-39.

Spivey largely builds her case around Thomas's concession that "if she had looked, she would have seen the Spivey vehicle and that the only reason she did not see the Spivey vehicle is because she did not look." Though perhaps accurate, this conclusion does not resolve whether Thomas "exercised such vigilance and care as an ordinarily prudent person would have exercised under the existing circumstances." *Schutt v. Brockwell*, 214 Va. 38, 41 (1973). Thomas crossed with the light at the crosswalk of a simple four-way intersection of less complexity than that in *Hopson*. And most significantly, Spivey was traveling not straight ahead like the vehicle in *Hopson*, but making a left turn *behind* and to the right of Thomas. "When a defendant relies upon contributory negligence as a defense, he has the burden of proving by the greater weight of the evidence not only that the plaintiff was negligent, but also 'that his negligence was a proximate cause, a direct, efficient contributing cause of the accident.'" *Karim v. Grover*, 235 Va. 550, 552 (1988) (internal citation omitted) (quoting *Whitfield v. Dunn*, 202 Va. 472, 477 (1961)). Thus, though Thomas may have been negligent in failing to continue looking left and right as she continued across Marshall Avenue, reasonable minds could differ as to (1) whether

- 5 -

this potential negligence was a proximate cause of the collision, and (2) whether she was negligent at all in failing to completely turn around and see if any cars were approaching her from behind as she crossed the road. [1]  Consequently, Thomas was not contributorily negligent as a matter of law and the trial court properly overruled the motions to strike and left the question to the jury.

2.  *Jury Instructions*

Properly instructing the jury "rest[s] within the sound discretion of the trial court." *Cooper v. Commonwealth*, 277 Va. 377, 381 (2009).  The sole purpose of appellate review of jury instructions is "to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises."  *Dorman v. State Indus., Inc.*, 292 Va. 111, 125 (2016).  "We review a trial court's decisions in giving and denying requested jury instructions for abuse of discretion."  *Conley v. Commonwealth*, 74 Va. App. 658, 675 (2022).  "Whether a proffered jury instruction accurately states the law, however, is reviewed *de novo*."  *Holmes v. Commonwealth*, 76 Va. App. 34, 53 (2022).  "And in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." *Cooper*, 277 Va. at 381.

We first begin our analysis considering the modified Model Jury Instruction 10.020, in which the trial court refused Spivey's requested inclusion of a pedestrian's duty of care.  Spivey argues that the trial court abused its discretion because it "instructed the jury that [Spivey's] duty to keep a proper lookout required her to use ordinary care to look in all directions" but rejected the instruction defining the scope for Thomas.  Spivey argues that "no other instruction given to the jury . . . properly defined the scope of the duty of the pedestrian/Thomas to keep a proper

---

[1] Although Spivey emphasized at oral argument that her car struck Thomas on her right side, it is nevertheless clear from the record that her car entered the intersection from behind Thomas after Thomas had already entered the intersection.

- 6 -

lookout." Consequently, she was unable to "argue that the pedestrian had a concurrent duty that required her to use ordinary care to look in all directions."

We disagree with Spivey's analysis. The jury was given a detailed instruction of a pedestrian's duties by way of granted Jury Instruction No. 16:

> A pedestrian has a duty to use ordinary care when she is crossing and/or walking along, the hard surface and/or traveled portion of a highway or street:
>
> (1) to keep a lookout for motor vehicles;
>
> (2) to refrain from entering or crossing an intersection; the hard surface of a highway or street; the traveled portion of a highway or street in disregard of traffic approaching in such a manner that a reasonable person would not attempt to enter or cross; and
>
> (3) to step from her course; intended path of travel into a place of safety if it reasonably appears to her that she is in danger of being struck by a motor vehicle.

Because granted Instruction No. 16 fairly and accurately informed the jury of a pedestrian's duties when crossing the street, the law in this case, including the duties of a pedestrian, was "clearly stated and . . . the instructions cover all issues which the evidence fairly raises." *Dorman*, 292 Va. at 125. Including a second instruction about the pedestrian's duties would be duplicative and "inappropriately 'single out a part of the evidence tending to establish a particular fact.'" *Holmes*, 76 Va. App. at 54 (quoting *Woods v. Commonwealth*, 171 Va. 543, 548 (1938)). "When granted instructions fully and fairly cover a principle of law," as the trial court did here with its instruction about the pedestrian's duties, "a trial court does not abuse its discretion in refusing another instruction relating to the same legal principle." *Daniels v. Commonwealth*, 275 Va. 460, 466 (2008).

We likewise reject Spivey's claim that the trial court erred when it refused to instruct the jury that a pedestrian's duty "to look for traffic does not cease but becomes more insistent when she comes to the middle of the street, before stepping into the lane of travel of vehicles coming

from her right" and that "[i]f the Plaintiff fails that duty to look for vehicles coming from her right, then she is negligent." This language was derived from the Supreme Court's holding in *Hopson*. 196 Va. at 838. But we have "cautioned against lifting the 'language of a specific opinion' for a jury instruction given that an appellate opinion 'is meant to provide a rationale for a decision—and may not translate immutably into jury instructions.'" *Mason v. Commonwealth*, 49 Va. App. 39, 49 (2006) (quoting *Va. Elec. & Power Co. v. Dungee*, 258 Va. 235, 251 (1999)).

As noted, *supra*, the circumstances of the collision in *Hopson* are distinguishable from those in this case. In *Hopson*, the vehicle was driving straight along the road which the pedestrian attempted to cross; the traffic was coming directly from the pedestrian's right. In contrast, Spivey was making a left turn onto the road Thomas was crossing; Spivey's car came from behind Thomas. The intersection in *Hopson* was also more complex than that in this case and, unlike Thomas, the pedestrian in *Hopson* did not cross at a crosswalk. All of those various factors were in consideration when the *Hopson* Court issued its ruling about the pedestrian's duties, and that language, tailored to that case, was not an appropriate jury instruction in this one.

Furthermore, we have held that the jury was sufficiently instructed on the pedestrian's duties when crossing the street. Instructing the jury that there is a point at which the pedestrian's duty "becomes more insistent" would clearly overemphasize "a part of the evidence." *Woods*, 171 Va. at 548. The trial court fulfilled its obligation to fully instruct the jury about the pedestrian's duties and did not err "in refusing another instruction relating to the same legal principle." *Daniels*, 275 Va. at 466.

## CONCLUSION

Reasonable minds could differ regarding whether Thomas was contributorily negligent as she crossed Marshall Avenue the morning she was struck by Spivey's car. The trial court properly denied Spivey's motions to strike and left the question of contributory negligence to the

jury. The trial court also fully and clearly instructed the jury on all principles of law fairly raised by the evidence in this case. We therefore affirm the rulings of the trial court.

*Affirmed.*