# Richmond

VANE L. HUTCHESON, ADM'R, ETC. V. W. H. MISENHEIMER.

January 13, 1938.

Present, Campbell, C. J., and Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*A. A. Bangel,* for the plaintiff in error.

*White & Guy,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Vernon Hutcheson was killed when struck by an automobile being driven by W. H. Misenheimer along one of the highways in Norfolk county. His administrator instituted an action for damages against Misenheimer and the jury returned a verdict for $5,000 in his favor. The court, upon motion, set the verdict aside and entered final judgment for the defendant, Misenheimer. We are to decide the correctness of the court's action.

The decedent was killed in the daytime while walking along the highway which was dry at the time. It is a double-drive highway and runs east and west. The east- and west-bound traffic is separated by a 24 foot parkway. The hard surface of each roadway is 19 feet. The northern portion is used exclusively for west-bound traffic. The highway is straight and level.

Plaintiff's decedent, accompanied by two companions, was walking on the south edge of the west-bound roadway. They were walking abreast in a westerly direction. Hutcheson was walking with one foot on the hard surface and the other on the parkway. He was not on the proper side of the highway and was violating Code, section 2154(126), (f), in that he was not walking "as near as reasonably possible to the extreme left side or edge of same."

Misenheimer, who will be referred to as the defendant, was driving his automobile in a westerly direction on the west-bound portion of the highway. There is a slight conflict in the testimony as to the speed of his car. He says that he was driving at approximately 25 miles per hour, but that he was not looking at his speedometer. Another witness says he was driving "fast" and that "he looked like he was going to a fire." Still another witness who was following him testified that he (the witness) was driving 35 or 40 miles per hour and was gaining on the defendant. However, a fair conclusion from all the evidence is

that he was not exceeding the lawful speed limit at or near the particular point of accident. When he sounded his horn, he said he was 60 or more feet behind the plaintiff's decedent. Another witness testified that this distance was only 25 to 30 feet. The two companions of the plaintiff's decedent testified that the defendant's car was "close" behind them when the horn was sounded. The horn was not an unusual one nor was it sounded in an unusual manner. It frightened or confused the plaintiff's decedent and his two friends. The two companions ran to their left, farther into the parkway, while the plaintiff's decedent ran diagonally to his right into the west-bound roadway, immediately in front of the defendant's automobile. He was struck by it and died from the injuries received.

The only evidence of the distance between the defendant and the three boys at the time the plaintiff's decedent ran out into the roadway, is his own. He said "without any warning whatever, it looked as though he hesitated just a second and as I came up almost abreast of him he took three sudden leaps and at the same time he was doing that I swerved my car quickly into the ditch. I was almost in the ditch at the same time. I don't think I had a chance to apply the brakes until after I struck the boy. My car was practically in the ditch or almost in the ditch by the time I struck him." (The ditch is on the extreme right of the west-bound roadway.) Again in answer to another question as to how far ahead the boy was when he ran out, the defendant said the boy was "a very short distance; I should say the distance from here probably to the entrance of the doorway, probably not that far." The distance to the doorway was then estimated by the defendant at approximately 40 feet.

Neither of his companions saw the automobile prior to the time it struck the plaintiff's decedent, and, of course, did not know how far it was behind them at the time he ran in front of it.

The two companions testified that the defendant sounded the horn close behind them. Witness Moore testified that

the defendant was only 25 or 30 feet behind the boys when the horn was sounded. His statement was considerably weakened because it was shown that he was engaged in serving sandwiches to a customer or customers at a road-side eating place, 400 feet due east of the point of the accident, and from the photographs introduced it was shown that his view was partially obstructed.

The testimony of the eyewitnesses is to the effect that the plaintiff's decedent was struck at a point somewhere between the center and the extreme right of the roadway and that the left front of the car struck him.

The notice of motion filed in this case charged no specific act of negligence. It simply charged negligence on the part of the defendant in general terms. The allegation is "that by reason of W. H. Misenheimer's negligence in the operation of the said automobile," etc., he caused it "to run into Vernon L. Hutcheson and as a direct result of which, Vernon L. Hutcheson received fatal injuries * * *." No bill of particulars was requested or required.

At the trial the plaintiff attempted to base a recovery upon two theories: First, that the defendant negligently sounded the horn too close behind his decedent and as a proximate result thereof he was terrified and caused to run in front of the car and to be fatally injured; and, second, that the defendant had a last clear chance to save his decedent.

The defendant asserted that he was guilty of no actionable negligence; that if he were, the plaintiff's decedent was guilty of contributory negligence which barred any recovery; and that he did not have a last clear chance to avoid striking and injuring him.

These respective positions were submitted to the jury upon instructions and after consideration they found for the plaintiff. After the verdict was rendered, the court was of the opinion that no proper verdict against the defendant could be sustained, and, therefore, it was set aside and final judgment was pronounced in his favor.

■■ What negligence has been shown against the defendant? There is no evidence of excessive speed, or of lack of control, or of other recklessness of any kind. The sole conduct on his part which the plaintiff complains of and which by any reasonable possibility could amount to negligence was the particular time and place of sounding the horn. If we assume that the defendant was negligent in that respect, the plaintiff still could not recover because his decedent was guilty of contributory negligence in walking on the left edge of the west-bound roadway in violation of the statute, and, further, in running to the right into the highway immediately in front of the defendant's oncoming automobile. The latter could not be charged with anticipating that plaintiff's decedent would suddenly dart from a place of comparative safety to a place of great danger. The testimony shows that if he had remained on the left edge of the roadway where he was walking he would not have been struck and, of course, if he had been walking, in compliance with the statute, upon the left edge of the east-bound roadway facing oncoming traffic he would not have been struck by the defendant. Therefore, if we assume that sounding the horn was an act of negligence on the part of the defendant, the two acts of negligence of plaintiff's decedent, (a) walking improperly on the edge of the highway, and (b) running in front of defendant's car, would amount to such contributory negligence as to bar a recovery.

Nothing remains except the question of whether or not the last clear chance applies to the facts presented here. As we have seen, there was no excessive speed or other recklessness on the part of the defendant. When the plaintiff's decedent ran out into the highway in front of him, he was 40 feet (or less) away from him. He had approximately one second to avoid the injury. He turned his car suddenly to the right and before he could apply his brakes he had driven against the plaintiff's decedent and inflicted the fatal injury.

■ The doctrine of the last clear chance is one involving nice distinctions, often of a technical nature, and courts

should be wary in extending its application. *Van Sickler* v. *Washington & O. D. Ry.*, 142 Va. 857, 128 S. E. 367. "The last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectively act upon the impulse to save another from injury." *Barnes* v. *Ashworth,* 154 Va. 218, 153 S. E. 711, 720.

■ The doctrine presupposes time for effective action. It is not applicable where the emergency is so sudden that there is no time in which to avoid the accident. Unless there is an appreciable difference in time between the earlier negligence of the plaintiff and the later negligence of the defendant and a last clear chance to avoid the accident afforded the defendant which he fails to avail himself of, the doctrine does not apply.

■ The plaintiff is not entitled to recover under the doctrine upon mere peradventure. The burden is upon him to show affirmatively by a preponderance of the evidence that by the use of ordinary care after the peril was discovered the defendant in fact had a last clear chance to avoid the injury. A mere possibility is not sufficient. *Washington & O. D. Ry.* v. *Thompson,* 136 Va. 597, 118 S. E. 76.

■ When we apply the foregoing rules to the particular facts in this case, it is manifest that the evidence is insufficient to support a verdict predicated upon the doctrine of last clear chance. The defendant had one second or less to save the plaintiff's decedent after his peril became known. The time was so short and the emergency so sudden that the defendant did not have time to place his foot upon the brake before the impact. He tried to avoid the accident by swerving sharply to his right but without avail. The plaintiff has failed, as a matter of law, to affirmatively prove that the defendant had a last clear chance to save the decedent.

To apply the last clear chance to the facts here would in effect amount to the introduction of the comparative negligence doctrine which, of course, has not been adopted in Virginia except in certain cases, and to wipe out as a defense contributory or concurring negligence.

Under no circumstances could the plaintiff prevail upon the merits. We, therefore, affirm the judgment of the trial court.

*Affirmed.*