## Staunton

WILLIS GRAHAM HARDIMAN AND VIRGINIA STAGE LINES, INC. v.
HOWARD DYSON, ADMINISTRATOR OF THE ESTATE OF
BARTON RUSSELL DYSON, DECEASED.

September 10, 1952.

Record No. 3962.

Present, Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*M. Wallace Moncure, Jr.,* and *Julien J. Mason,* for the plaintiffs in error.

*Frank B. Beazley,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Barton Russell Dyson, thirty-six years old, was struck and killed by a passenger bus of the Virginia Stage Lines, Incorporated, operated by its employee, Willis Graham Hardiman. The administrator of the deceased brought this action against both the owner and operator of the bus, alleging that the accident was due to their negligence. He obtained a verdict against them in the sum of $3,000, which the defendants seek now to have reversed and a final judgment entered in their favor.

The sole issue is whether there was sufficient evidence to justify the application of the doctrine of the last clear chance.

The accident occurred about eight-fifteen o'clock p. m., December 24, 1948, on Virginia State Highway No. 2, in Caroline county, approximately four hundred yards south of Dixie Service Station. The weather was cloudy, the road was dry, but the visibility was described as good. Highway No. 2 has a black hard surface pavement, twenty to twenty-two feet in width. It runs practically straight north and south at the point of the accident. Just before reaching that point, it goes down a slight grade to a bottom, level for "some little distance," and then ascends. The collision took place on the ascending grade between seventy-five and eighty feet from the bottom. The upgrade is also slight, but sufficient to affect the focus of lights of an approaching automobile one hundred feet distant from the point of the collision. The shoulders of the road, in general, are two or three feet wide; but on the west side of the highway opposite the point of the accident the "small ditch line" of the highway is about eighteen feet from the hard surface.

On the night of December 24th, plaintiff's decedent went to the Dixie Service Station, a little after seven p. m., in an intoxicated condition. Mrs. Ida Smithers, the operator of the service station asked him to leave. Afraid a car might hit him, she told him not to go onto the highway. He left and returned in about ten minutes. Again requested to leave, and given the same warning, he went out but returned in twenty minutes. He left the third time, walking northwardly on the highway, that is, in a direction from the service station opposite to that of the place where the accident later occurred.

In the meantime, two passenger buses of the Stage Lines were proceeding southerly towards Richmond. The first to reach Dixie Service Station was driven by the defendant, Hardiman, and the second by Artwin Howell. Hardiman stopped to take on or discharge passengers; but Howell drove on, passing Hardiman at the station. Shortly afterwards Hardiman continued his southerly course towards Richmond.

Hardiman was the only eye-witness of the accident. He testified that after leaving the service station, he met and passed five or six cars bound north; that he was driving twenty to twenty-five miles an hour, with his lights on low beam, as were the lights on all of the vehicles traveling in each direction; that, under ordinary conditions, his lights would show an object on the road one hundred feet ahead; that he was watching the oncoming cars and the right shoulder of the road to gauge his travel and give the other vehicles plenty of room to pass safely; and that as he reached a point about four hundred yards south of the service station and was starting up the slight grade in the road, he saw plaintiff's decedent twenty or twenty-five feet distant from him, up the grade, walking in the middle of the southbound lane, with his back towards the approaching bus. An oncoming car had just passed his bus, and another was approaching on the northbound lane "just opposite where the man was." Immediately upon seeing the man, he applied his brakes; but on account of the surrounding circumstances and the short distance he was unable to avoid striking him.

The bus stopped within fifteen feet from the point of the impact. It appeared that its front struck Dyson, knocked him down, but did not pass completely over him. He was killed and

his body was found lying "crossways of the road," under the vehicle, about midway of its front and rear wheels.

The dead man was wearing dark clothes and his apparel was very muddy. Hardiman said that when he saw him on the road there was nothing in his actions or conduct to indicate whether he was drunk or sober.

F. E. Slater, a state police officer, reached the scene about fifteen minutes after the accident. He questioned Hardiman: Hardiman told him that he did not see plaintiff's decedent "until he loomed up in front of him," and it was then too late to stop. The officer said that the point of impact was distant from the bottom of the grade, heretofore mentioned, about seventy-five or eighty feet, and that a vehicle traveling twenty to twenty-five miles per hour, travels from thirty to thirty-seven and one-half feet per second.

Welford Reece and Howard Dyson, the latter a brother of the deceased, also shortly arrived on the scene. They testified that Hardiman told Howard Dyson merely that he did not see his brother, as against the fuller statement of Hardiman to Slater.

Howell, the driver of the bus which went on ahead of Hardiman, knew nothing of the accident. When he reached Richmond, he heard that a man had been killed on Route 2, and he recalled the following circumstances. He testified that after he left Dixie Service Station and just as he went down a grade in the road, and "started up the knoll," a man "almost staggered off the side of the road almost in front of me;" that the man "was walking on the left shoulder" coming towards him, that is, going back towards Dixie Service Station. Howell said that with his lights on dim, and meeting a continuous line of traffic, it was "difficult to see." Asked if he had any trouble missing the man, he replied "I almost hit him, I don't think I missed him but a very little bit," and "if he had been on the edge of the pavement, I would have been bound to have hit him, because traffic was very heavy."

Atwell Burruss, driving a car northwardly, said he passed the first bus driven by Howell, and then saw the decedent walking southerly in the middle of the southbound lane, with "his legs spread open kind of." He estimated that the bus, driven by Hardiman, was probably seventy-five to one hundred feet north

of him when he passed Dyson. He remembered that there was a car close behind him, (Burruss) and another one some distance back. In response to the question whether he had any trouble in seeing plaintiff's decedent, he said: "No I saw him, it was kind of hard to see him, he had on dark clothes."

The trial court overruled a motion of the defendant to strike plaintiff's evidence on the ground that it disclosed that plaintiff, as a matter of law, was guilty of negligence which was the sole proximate cause of the accident, or, at the least, a concurrent and efficient cause up to the moment of its occurrence.

The court instructed the jury that plaintiff's decedent was guilty of negligence as a matter of law; but that he was, nevertheless, entitled to recover if the jury believed from the evidence that the driver of the bus, "saw, or by the exercise of reasonable care could have seen within sufficient time to have avoided the accident with safety to himself, that the deceased was in a perilous position from which he was unable to extricate himself."

Plaintiff contends that he was entitled to this instruction upon the ground that if Hardiman had kept his eyes directed upon the road ahead he should have seen Dyson, and observed him to be in a helpless condition in sufficient time to have stopped the bus or turned it aside before the collision.

His argument in support overlooks not only the undisputed facts in the case, but the high duty which the bus driver owed to his passengers and himself to drive safely.

That plaintiff's decedent was guilty of contributory negligence is too plain for discussion. He not only violated the ordinary rules of self-preservation; but he violated the statute relating to a pedestrian's use of the highways. Virginia Code, 1950, § 46-247. There is no doubt that he was intoxicated. That explains the negligent conduct which induced his mishap; but voluntary intoxication does not excuse negligence. The law of negligence as to intoxicated persons is the same as that applicable to the sober. 38 Am. Jur., Negligence, page 283, § 36; 65 C. J. S., Negligence, page 784, § 143.

The evidence discloses that immediately prior to the accident, plaintiff's decedent was proceeding first in one direction and then in another; that he was in one lane of traffic and again in another; and that he was sometimes on the hard surface and

at other times on the shoulder of the road. It is not disclosed how long he had been in the southbound lane at the time he was observed by Hardiman, nor from whence he immediately came. Notice of the facts that, at different times during the same evening, one witness saw him "staggering," and another saw him "with his legs spread open," cannot be imputed to Hardiman. There is no evidence whatever to show that Hardiman had any opportunity to observe that Dyson was intoxicated or helpless.

█ It cannot be successfully questioned that it was the duty of Hardiman, upon meeting and passing cars, to lower his lights, to watch his side of the road, to avoid running off it, and to allow sufficient passage to oncoming vehicles. He had the right to assume that others upon the highway would obey the law and perform their duties, and to act upon that belief until the contrary appeared. *Harris Motor Lines* v. *Green,* 184 Va. 984, 992, 37 S. E. (2d) 4, 171 A. L. R. 359; *Millard* v. *Cohen,* 187 Va. 44, 46 S. E. (2d) 2.

It is a matter of common knowledge that the lights of approaching automobiles interfere with normal vision, and that it is difficult to observe a person dressed in dark clothes on a black surface highway. Hardiman's bus, traveling at the undisputed rate of thirty to thirty-seven and one-half feet per second, required less than a second to reach the point where Dyson was first seen by its driver. Had Dyson, notwithstanding the difficulties mentioned, been observed seventy-five feet distant up the grade, Hardiman would still have had but two seconds before the collision.

█ The plaintiff was not entitled to recover on a mere peradventure. The burden was on him to show by a preponderance of the evidence that the bus driver was negligent in what he did or failed to do after he discovered, or should have discovered, that Dyson was in a situation of helplessness or unconscious peril. *Anderson* v. *Payne,* 189 Va. 712, 54 S. E. (2d) 82. The last clear chance doctrine presupposes time for effective action and is not applicable when the time is too short to avoid the accident by exercising reasonable care. *Hutcheson* v. *Misenheimer,* 169 Va. 511, 194 S. E. 665; *Stark* v. *Hubbard,* 187 Va. 820, 48 S. E. (2d) 216. It does not supersede the law of con-

tributory or concurring negligence. *Keatts* v. *Shelton,* 191 Va. 758, 63 S. E. (2d) 10.

██ Under the circumstances of this case, there was not time for effective action after the bus driver discovered, or should have discovered, the peril of plaintiff's decedent. In order to apply the doctrine of the last clear chance here, we would have to disregard the gross and continuing negligence of Dyson, and hold that it was not a cause but only a condition of the accident. Beyond doubt, it was an immediate, proximate and efficient cause. It never became remote.

We are of opinion that the trial court should have sustained the motion to strike the evidence of the plaintiff, or have set aside the verdict of the jury and entered judgment for the defendant. Since it appears that all of the facts were fully developed in the trial, the judgment complained of will be reversed and final judgment entered here for the defendant. Virginia Code, 1950, § 8-493.

*Reversed and final judgment.*