## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

LOUIS ELGIN VANLANDINGHAM v. EUNICE B. VANLANDINGHAM, AD-
MINISTRATOR OF THE ESTATE OF CARROLL JETT VANLANDINGHAM, SR.,
DECEASED.

April 24, 1972.

Record No. 7671.

Present, All the Justices.

*Rufus G. Coldwell, Jr. (Browder, Russell, Little & Morris,* on
brief), for plaintiff in error.

*C. Jackson Simmons; James C. Breeden (Dunton, Simmons &
Dunton,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

Louis Elgin Vanlandingham (Elgin) appeals from a final order
awarding a judgment on a jury verdict for $20,000.00 to the plaintiff,
Eunice B. Vanlandingham (Eunice), administrator of the estate of
Carroll Jett Vanlandingham (Carroll), deceased, in an action for
the wrongful death of Carroll.

We granted a writ of error limited to a consideration of whether the trial court erred in granting instructions 5 and 8.

Carroll was killed in an accident which occurred around 9:00 p.m. on December 9, 1968, approximately three tenths of a mile west of Callao on U. S. Route 360. The road was a two-lane blacktop highway with a speed limit of 55 miles per hour. Carroll was riding in the right front seat of a car driven by Eunice. Eunice, who had been traveling west, turned left into a private driveway on the south side of Route 360. Her purpose was to back her car onto the highway and to reverse her direction of travel to return east toward Callao.

Eunice testified that she stopped in the driveway, looked both ways and saw no lights of oncoming traffic. It was only after she backed onto Route 360 that she first saw the lights of Elgin's eastbound car which struck her car almost instantly. She testified that her view to the west, from whence Elgin came, was from one quarter to three quarters of a mile.[1] She attributed her failure to see the lights of Elgin's car sooner to the fact that Elgin was traveling at a high rate of speed. She described Elgin's lights as "flying" or "floating." She further testified "I attempted to get out of the road. I put my car in drive, but I couldn't get out of the way."

Eunice testified that Carroll, who was looking west prior to and at the time she commenced backing into the highway, apparently did not see Elgin's car as he said nothing to her.

Mary Jean Winder, who was riding with Elgin, was called as a witness by the attorneys for Carroll's estate. She testified that she and Elgin had been together since early afternoon. They had both been drinking beer and eggnog. She testified Elgin's speed to be approximately 70 miles per hour when she first saw the lights on Eunice's car. She testified that the cars collided but her testimony does not disclose how much time elapsed from the time she saw Eunice's lights to the time of the crash.

Elgin testified he was driving east at approximately 50 to 55 miles per hour when Eunice's car "just popped up there. I never seen any headlights or nothing. It just came out of nowhere . . . It was crossways in the road." He did not have time to apply his brakes but "swerved a little way to the left. Wasn't no way I could get around her."

---

[1] The other evidence establishes the sight distance to the west to be one quarter of a mile.

The court, at the plaintiff's request, granted Instruction No. 5.[2] In so doing the trial court erred.

■ While the language of the instruction has been approved by us in several cases, including *Twyman* v. *Adkins*, 168 Va. 456, 191 S.E. 615 (1937), *Body, Fender & Brake Corp.* v. *Matter*, 172 Va. 26, 200 S.E. 589 (1939) and *Roberts* v. *Mundy*, 208 Va. 236, 156 S.E.2d 593 (1967), further consideration convinces us that this instruction is not only misleading and confusing but that it is not a correct statement of the law.

The fatal vice in the instruction is that it makes the defendant negligent if he is unable to stop his car within the range of his vision. The law in Virginia imposes no such duty. *Finch* v. *McRae*, 206 Va. 917, 922, 147 S.E.2d 83, 87 (1966); *Yates* v. *Potts*, 210 Va. 636, 640, 172 S.E.2d 784, 787 (1970).

Therefore, we disapprove the instruction and overrule *Twyman*, *Body, Fender & Brake* and *Roberts* insofar as they are inconsistent with our holding here.

■ We also hold that the trial court erred in granting Instruction No. 8. This instruction, a last clear chance instruction dealing with a helpless plaintiff, has no application to this case as the facts here do not disclose a helpless plaintiff.

Our prior decisions as to the meaning of "helpless plaintiff" have been misunderstood. In the sequence of events leading to an accident a point of time is reached when one of the parties becomes helpless in the sense that no action on his part could avoid the accident. But this is not what is meant by the term "helpless plaintiff." For it is only in those rare instances where the plaintiff is physically incapacitated that we have a "helpless plaintiff" within the meaning of the last clear chance doctrine.

*Reversed and remanded.*

---

[2] "INSTRUCTION NO. 5

"The Court Instructs The Jury That:

"It is the duty of all persons using the highways to exercise ordinary care to keep their vehicles under proper control at all times having due regard for the conditions, width and surface of the highway; and if you believe from a preponderance of the evidence that the defendant immediately before or at the time of the collision, was operating his car in such way and manner that he could not stop his car after he saw, or in the exercise of reasonable care should have seen, the plaintiff's car, then he was negligent.

"And if you further believe from such evidence that any such negligence was a proximate cause of the collision, then, unless the plaintiff was guilty of negligence which proximately contributed to cause the collision, you shall find your verdict in favor of the plaintiff."