DONALD M. PACK, ADMINISTRATOR, ETC.

v.

JOHN DOE

Record No. 860646

November 18, 1988

Present: Carrico, C.J., Poff, Compton, Stephenson, Russell, and Thomas, JJ., and Gordon, Retired Justice

*F. Rodney Fitzpatrick* for appellant.
*James W. Jennings, Jr. (Elizabeth A. Schell; Woods, Rogers & Hazlegrove*, on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

The dispositive question in this wrongful death action is whether a plaintiff, whose decedent was guilty of contributory

negligence as a matter of law, established entitlement to rely on the last clear chance doctrine as a basis for recovery against a negligent defendant.

On March 26, 1983, about 1:35 a.m., Anthony Mitchell Pack was lying motionless in the travel portion of Interstate 581 in Roanoke County. He was run over and killed by an unidentified tractor-trailer truck operated by an unknown person, who drove the vehicle from the scene after the accident without stopping.

In March 1985, Pack's personal representative brought this damage suit under the death by wrongful act statutes against "John Doe" pursuant to the uninsured motorist statute. In a 1986 trial, a jury found in favor of the plaintiff and assessed damages of $33,412.23. Subsequently, the trial court sustained defendant's motion to set aside the verdict. We awarded the plaintiff this appeal from the April 1986 order entering judgment for the defendant.

Even though the trial court has disapproved the verdict of the jury, under settled rules we will consider the evidence in the light most favorable to the plaintiff, drawing from the evidence all reasonable inferences. *Neighbors* v. *Moore*, 216 Va. 514, 515, 219 S.E.2d 692, 694 (1975).

During the evening preceding the accident, the decedent Pack, age 18, had been drinking alcoholic beverages steadily at various locations near Roanoke since about 5:30 p.m. A friend observed the decedent's demeanor and saw him operating a motor vehicle within an hour of the accident. The friend testified that Pack's condition at the time was "okay" and that he was not "sloppy drunk or anything like that." Pack's driving was not "erratic," according to the witness, and he did not "swerve or change lanes" while operating his Jeep vehicle.

A few minutes before the decedent was killed, three witnesses observed him lying in the middle of three generally northbound traffic lanes on Interstate 581, a limited-access dual highway. The night was clear. The highway was dry, straight and virtually level. The speed limit was 55 miles per hour. There was no artificial lighting in the area.

The northbound lanes of the highway were bounded by narrow gravel shoulders, ditches, and steep ascending slopes overgrown by trees and dense shrubbery. There were no access roads at the scene and, according to the evidence, pedestrians were barred from the highway. A short distance to the north, the northbound

lanes separated to permit traffic to move in either of two directions on Interstate 81. At the scene, a bridge carried traffic on Woodhaven Road over Route 581.

Sheldon Ray Sweeney approached the scene driving his "small pickup truck" north on Route 581 travelling about 55 miles per hour. As he approached the "exit off of 581," he suddenly observed "a human body lying in the road." After making "a very hard turn to keep from striking the body," Sweeney brought his truck to a stop on the left shoulder of the highway.

Several minutes later, Bobby Joe Beaver, accompanied by Mervyn C. Timberlake, Jr., was operating an automobile north on Route 581 travelling between 50 and 60 miles per hour. As Beaver approached the Woodhaven bridge, he observed Sweeney's truck parked with its rear lights burning. Just as Beaver drove under the bridge, his passenger "hollered" and Beaver saw "the outline of a body" in the road ahead. He swerved his vehicle, avoided the body, and stopped on the left shoulder near the pickup truck.

The three men left their vehicles, both of which had "flashing lights going," and began walking toward the body with Sweeney carrying a lighted flashlight. As they approached Pack, they saw and heard a tractor-trailer truck being driven northbound toward the scene. Sweeney began waving the light and the other two waved their hands "trying to catch [the truck driver's] eye." The speed of the truck reduced but brakes never were applied. The vehicle ran over Pack, slowed even more, and then was driven from the scene.

According to the witnesses, Pack was lying motionless in the highway clad in dark clothing. Sweeney said that "he was just laying straight out there" on his stomach. After Pack was "hit," according to Sweeney, he was on his back because the "body turned over and rolled" at impact. Beaver and Timberlake testified that Pack was lying on his back with "his head up and his arms to the side" before the impact. Pack's "feet were together and his toes were pointing right straight up."

According to the witnesses, a short time before he was struck by the truck at least ten vehicles travelled past Pack without striking him. Following the accident, Pack's Jeep was found in good operating order parked on the shoulder of Woodhaven Road at the entrance to a driveway near the bridge.

The medical examiner testified that Pack was alive when struck and that his "blood alcohol content was .20" at the time of the autopsy. The medical examiner further opined that Pack's death was caused by "crushing injuries to the head, chest and abdomen due to being run over by a motor vehicle." The examiner eliminated other causes of death such as from stabbing or a gunshot. In addition, he found no injury consistent with a jump or fall from a considerable height; there were no injuries to the buttocks, legs, ankles, or feet.

The examiner further stated that a .20 blood alcohol reading for a person of Pack's height and weight, five feet nine inches and 160 pounds, could produce unconsciousness if the person were "in a situation where he is . . . relaxed or not stimulated." That level, according to the examiner, is not necessarily associated "with coma where you can't wake someone up, but it would put someone to sleep quite readily." The examiner testified that from the autopsy findings alone he could not determine whether Pack was alert or unconscious when struck.

Upon conclusion of the plaintiff's evidence in chief, the trial court, ruling on the defendant's motion to strike, decided that the plaintiff's decedent was guilty of contributory negligence as a matter of law. The court also decided that a jury issue was presented on the question whether the doctrine of last clear chance applied to excuse Pack's contributory negligence. In addition, the court took the motion under advisement on the issue of assumption of the risk. Upon conclusion of all the evidence, the court made the same rulings on last clear chance and assumption of risk and instructed the jury on those theories.*

---

\* The last clear chance instruction provided:

"The Court instructs the jury that as a matter of law, the plaintiff's decedent was guilty of contributory negligence by placing himself in a situation of peril. This contributory negligence of the plaintiff's decedent will not bar the plaintiff's recovery if you find by the greater weight of the evidence that:

(1) the plaintiff's decedent was in a situation of peril from which he was physically unable to remove himself; and

(2) the defendant saw or should have seen the plaintiff's decedent and realized or should have realized his peril; and

(3) thereafter, the defendant could have avoided the accident by using ordinary care,

Unless you find by the greater weight of the evidence that Mitchell Pack assumed the risk as described in Instruction No. 11."

In ruling on the motion to set aside the verdict, the court, in a letter opinion, noted the earlier decision on contributory negligence. It repeated the earlier rulings that the doctrine of last clear chance was applicable and was a question for the jury. The court also decided, however, that the plaintiff's decedent voluntarily assumed the risk of injury as a matter of law and that the plaintiff was barred from recovery. Accordingly, the verdict was set aside and judgment was entered for the defendant.

On appeal, the plaintiff's assignments of error raise two issues. First, the plaintiff contends the trial court "erred in setting aside the jury verdict because the jury verdict was based on credible evidence within the settled law of the last clear chance doctrine." Second, the plaintiff contends the trial court "erred in setting aside the jury verdict on assumption of the risk as a matter of law," specifying a number of reasons to support that position. The plaintiff did not assign error to the trial court's ruling that Pack was guilty of contributory negligence as a matter of law. The defendant assigned cross-error contending, *inter alia*, that the trial court "erred in submitting the case to the jury on the doctrine of last clear chance."

We will agree with the plaintiff and assume without deciding that the question of assumption of the risk properly was a question for the jury. This brings us to the dispositive issue in the case, addressed in both the assignments of error and cross-error: Was the doctrine of last clear chance applicable under these facts?

The doctrine "is one involving nice distinctions, often of a technical nature, and courts should be wary in extending its application." *Hutcheson* v. *Misenheimer*, 169 Va. 511, 516-17, 194 S.E. 665, 667 (1938). Prior to the decision in *Greear* v. *Noland Co.*, 197 Va. 233, 89 S.E.2d 49 (1955), "the Virginia law on last clear chance was in a state of hopeless confusion." Muse, *Virginia's New Last Clear Chance Doctrine*, 1 U. Rich. L. Notes 67, 67 (1959). The cases on the subject were "irreconcilable." *Harris Motor Lines* v. *Green*, 184 Va. 984, 992, 37 S.E.2d 4, 7 (1946). The many conflicting decisions demonstrated "fusion and confusion with the rule of comparative negligence." *Anderson* v. *Payne*, 189 Va. 712, 726, 54 S.E.2d 82, 89 (1949) (Miller, J., concurring).

In *Greear*, the Court adopted the rule that the doctrine of last clear chance applies in two situations: first, where the injured

party has negligently placed himself in a position of peril from which he physically is unable to remove himself, the "helpless plaintiff;" and, second, where the injured party has negligently placed himself in a position of peril from which he physically is able to remove himself but is unconscious of his peril, the "inattentive plaintiff." 197 Va. at 238-39, 89 S.E.2d at 53.

In the case of a helpless plaintiff, the defendant is liable if he saw or should have seen the injured party. In the case of an inattentive plaintiff, the defendant is liable only if he actually saw the injured party. In either case, however, liability is further predicated upon the proposition that the defendant realized or ought to have realized the plaintiff's peril in time to avert the accident by use of reasonable care. *Simmers* v. *DePoy*, 212 Va. 447, 451, 184 S.E.2d 776, 780 (1971). As set forth in the trial court's instruction on the subject, *supra*, we are concerned in this case only with an alleged helpless plaintiff.

A plaintiff cannot recover under the doctrine of last clear chance on "a mere peradventure." *Smith* v. *Spradlin*, 204 Va. 509, 512, 132 S.E.2d 455, 457 (1963). The burden is upon the plaintiff to establish by a preponderance of the evidence each and every element of the branch of the doctrine upon which he relies. *Id.*, 132 S.E.2d at 457.

In the present case, we need address the first element only of the helpless plaintiff situation. This is because we conclude the plaintiff failed to establish that Pack legally was in a situation of peril from which he physically was unable to remove himself.

In *Vanlandingham* v. *Vanlandingham*, 212 Va. 856, 188 S.E.2d 96 (1972), we defined a "helpless plaintiff," after stating that, "Our prior decisions as to the meaning of 'helpless plaintiff' have been misunderstood." *Id.* at 858, 188 S.E.2d at 98. We said:

> "In the sequence of events leading to an accident a point of time is reached when one of the parties becomes helpless in the sense that no action on his part could avoid the accident. But this is not what is meant by the term 'helpless plaintiff.' For it is only in those rare instances where the plaintiff is physically incapacitated that we have a 'helpless plaintiff' within the meaning of the last clear chance doctrine." *Id.*, 188 S.E.2d at 98.

Here, there is insufficient proof of how, when, why, or in what condition Pack came to be on Route 581. A statement from a recent, factually similar case not involving last clear chance is apt here. "There is no evidence, only conjecture, as to how he became prone in the lane of traffic. He may have fallen asleep, become ill, or sought to commit suicide. He may have rolled into the road from the shoulder . . . ." *Hoffner v. Kreh*, 227 Va. 48, 53, 313 S.E.2d 656, 659 (1984).

■ The plaintiff contends that Pack was "drunk, unconscious or in a rather deep sleep when he was killed." The evidence on this subject shows that his condition, whatever it may have been, was induced by the consumption of alcohol. But a person who voluntarily consumes a quantity of intoxicants sufficient to produce drunkenness, drowsiness, or unconsciousness is not "physically incapacitated" as contemplated by *Vanlandingham*.

■ Voluntary intoxication does not excuse negligence; the law of negligence relating to intoxicated persons is the same as that applicable to persons who are sober. *Hardiman v. Dyson*, 194 Va. 116, 120, 72 S.E.2d 361, 364 (1952). Thus, it would be illogical to conclude that intoxication, voluntarily induced, is the type of physical incapacity which will excuse contributory negligence via application of the last clear chance doctrine when such conduct does not otherwise excuse fault. The "physical incapacity" contemplated in *Vanlandingham* must be a condition resulting from non-negligent, non-intentional natural causes, such as a seizure, cerebral accident, or heart attack. *Cf.*, *e.g.*, *Washington & O.D. Railroad v. Taylor*, 188 Va. 458, 50 S.E.2d 415 (1948) (pre-*Vanlandingham* and pre-*Greear* case involving death of intoxicated person lying upon railroad track where last clear chance applied but where no issue raised to dispute that intoxicated plaintiff is not legally "helpless").

■ Accordingly, we hold that the plaintiff failed to present sufficient evidence to justify the application of the last clear chance doctrine. Because that doctrine is not applicable, the trial court's ruling on contributory negligence, not challenged on appeal, becomes effective to bar the plaintiff's recovery. The trial judge, when ruling on Pack's negligence, observed that the evidence showed pedestrians were not permitted on this limited-access highway where there were no cross streets, sidewalks or crosswalks. The judge also observed that the facts, taken "in any light," showed the decedent was guilty of neglect as a matter of

law whether he had been "walking on the interstate, standing on the interstate, lying down on the interstate, falling asleep on the interstate, lying down resting and falling asleep, any of those combinations."

Thus, while the trial court erroneously decided the last clear chance question, the court correctly ruled that the plaintiff was not entitled to recover. Consequently, the judgment of the trial court will be

*Affirmed.*

STEPHENSON, J., dissenting.

I respectfully dissent.

I agree with the majority that because the last clear chance doctrine often involves technical distinctions, courts should be wary in extending the doctrine's application. I also agree that voluntary intoxication does not excuse negligence and, unquestionably, Pack was negligent.

I do not agree, however, with the majority's holding that "a person who voluntarily consumes a quantity of intoxicants sufficient to produce . . . unconsciousness is not 'physically incapacitated' as contemplated by *Vanlandingham* [v. *Vanlandingham*, 212 Va. 856, 188 S.E.2d 96 (1972)]." In my view, a negligent plaintiff who is unconscious, for whatever reason, is physically incapacitated and, therefore, incapable of extricating himself from a position of peril. The purpose of the last clear chance doctrine, also referred to as the humanitarian doctrine, is to protect just such a "helpless plaintiff."

I fail to see how *Vanlandingham* lends support to the majority's holding. Indeed, in *Vanlandingham* we merely stated that "it is only in those rare instances where the plaintiff is physically incapacitated that we have a 'helpless plaintiff' within the meaning of the last clear chance doctrine." *Id.* at 858, 188 S.E.2d at 98. Neither *Vanlandingham* nor any of our other cases have held that a plaintiff rendered unconscious by the voluntary consumption of intoxicants is not physically incapacitated within the meaning of the doctrine.

In *Washington & O. D. Railroad* v. *Taylor*, 188 Va. 458, 50 S.E.2d 415 (1948), the plaintiff's decedent was struck by a train while lying unconscious on a railroad track. His unconsciousness

was produced by the voluntary consumption of intoxicants. Applying the last clear chance doctrine, we affirmed a judgment for the plaintiff. The majority, in effect, overrules *Taylor* and holds that an unconscious, intoxicated person can never be a legally "helpless plaintiff." This holding is contrary to the great weight of authority in other jurisdictions. *See generally* Annotation, *Last Clear Chance—Intoxicated Person*, 26 A.L.R.2d 308 (1952).

The majority goes on to declare that a physical incapacity sufficient to render a plaintiff legally "helpless" under the last clear chance doctrine "must be a condition resulting from *non-negligent*, non-intentional causes." (Emphasis added.) This statement is incredible; obviously, the doctrine necessarily presupposes a negligent plaintiff. *E.g.*, *Burton* v. *Oldfield*, 194 Va. 43, 48, 72 S.E.2d 357, 361 (1952).

A hypothetical will demonstrate the fundamental fallacy in the majority's holding. Suppose Pack, in a perfectly sober condition, had driven an automobile on Interstate 581 at a speed in excess of 100 miles per hour, had lost control of the automobile and struck an object on the edge of the highway, and had been thrown unconscious upon the highway in the precise location that he was found in the present case. Suppose further, that in all other respects the facts are identical to those found in the present case. In the hypothetical case, Pack clearly would have been a "physically incapacitated" person within the meaning of the last clear chance doctrine, albeit his incapacity was produced by his negligence.

I submit that the facts of the present case and the hypothetical case are, in principle, indistinguishable, unless we decide, as the majority apparently has, that a helpless, unconscious drunk is beyond the realm of society's humanitarian concerns. I am unwilling to treat a person insensible from voluntary drunkenness with such disdain. It matters not whether the injured party is unconscious from intoxicants, accident, or illness—a helpless human life is at stake.

The jury, under a proper instruction, found that, notwithstanding Pack's negligence, his administrator was entitled to rely upon the last clear chance doctrine as the basis for a recovery against a negligent defendant. The trial court approved this finding. Because I believe Pack was physically incapacitated within the

meaning of the last clear chance doctrine, I, too, would approve the jury's verdict and allow a recovery.

RUSSELL and THOMAS, JJ., join in dissent.