60 F.3d 823
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Kenneth C. KING, by his Guardian, Debra Ann King, Plaintiff-Appellant,
v.
AARON SMITH TRUCKING COMPANY, INCORPORATED; William Wells,
Defendants-Appellees.
 No. 94-1562.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 6, 1995.
Decided: June 28, 1995.
 
 ARGUED: Carnis Eugene Compton, C. EUGENE COMPTON, P.C., Lebanon, VA, for Appellant. Nathan Hilles Smith, SMITH & JENSEN, P.C., Richmond, VA, for Appellees. ON BRIEF: Eric S. Jensen, SMITH & JENSEN, P.C., Richmond, VA, for Appellees.
 Before WILKINSON and WILKINS, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PHILLIPS, Senior Circuit Judge:
 
 
 1
 Kenneth King, by his wife and guardian Debra King, appeals from the district court's order granting summary judgment for defendants Aaron Smith Trucking Company and William Ivey Wells in King's diversity suit to recover damages for personal injuries suffered in a motor vehicle accident. King argues that the district court erred in determining that recovery was barred as a matter of law by the doctrines of assumption of risk and contributory negligence. We agree. We do not agree, though, with King's further contention that the district court should have found Wells guilty of willful and wanton negligence as a matter of law and therefore have granted King's own motion for summary judgment on the question of defendants' liability. Accordingly, we affirm the district court's order in part, reverse in part, vacate and remand for further proceedings.
 
 I.
 
 2
 At approximately 6:30 a.m. on December 10, 1990, Wells, a professional truck driver, was pulling a flatbed trailer a few miles north of Abingdon, Virginia for his employer, Aaron Smith Trucking Co. Wells was leaving a parking lot located on the eastern side of Route 19, a four-lane road with a median strip separating the north- and south-bound lanes. Looking to his left, Wells saw that the northbound lanes were clear for a mile but for a single vehicle approximately 950 feet away. A dip in the highway to Wells's right made it impossible for him to tell whether the southbound lanes were clear. Despite the oncoming northbound car, Wells crossed the northbound lanes and entered the median area in order to turn south toward Abingdon. He waited his cab in the median--with the 48-foot-long trailer completely blocking the two northbound lanes--while awaiting passage of three oncoming southbound vehicles that had been hidden by the dip.
 
 
 3
 Kenneth King was the driver and sole occupant of the oncoming northbound car. Then thirty-five years old and legally blind for twenty years, King had been licensed by the Commonwealth of Virginia to drive during daylight hours only.[1] It was not daylight when, on the morning of December 10, 1990, King approached Wells's truck. It was dark. Apparently, King did not see the truck.[2] Approximately twelve to thirteen seconds after Wells had pulled across the northbound lanes of Route 19, King's car ran under Wells's trailer. King survived, but his skull was crushed causing him severe brain damage.
 
 
 4
 In February 1992, King, then a resident of Virginia, filed a diversity action in the United States District Court for the Western District of Virginia against Aaron Smith Trucking Co. and William Wells, both North Carolina residents. He prayed for ten million dollars each in compensatory and punitive damages.
 
 
 5
 The defendants moved for summary judgment on the independent grounds that King assumed the risk of personal injury by automobile accident and was contributorily negligent by driving in hours of darkness despite his visual disability and in violation of Virginia law. King moved for partial summary judgment on the issue of liability on the grounds that Wells was guilty of willful and wanton negligence, thereby negating the bar of any contributory negligence on his part. King sought judgment imposing liability on defendants, leaving damages to be determined by trial.
 
 
 6
 Ruling on the parties' cross motions, the court held that there was no genuine issues of material fact and that, as a matter of law, (1) King assumed the risk of injury by driving with full knowledge of his visual disability, (2) King was contributorily negligent per se for driving in violation of law and the conditions of his driver's license, (3) King's contributory negligence was a proximate cause of his injuries, (4) Wells did not act with willful or wanton negligence, and (5) Wells did not have a "last clear chance" to avoid the accident. Accordingly, the district court granted defendants' motion for summary judgment, denied King's motion, and dismissed the complaint.
 
 
 7
 On appeal, King contends that the district court misconstrued the doctrine of assumption of risk and erred in ruling for the defendants on the issues of proximate causation, willful and wanton negligence, and last clear chance. In particular, King argues that proximate causation and last clear chance were questions properly left for the jury and therefore should not have been decided as a matter of law. In contrast, he argues that the question whether Wells's negligence was willful and wanton was not a jury question, but rather one that the district court should have decided as a matter of law in King's favor. For this reason, King urges that the district court erred not only in granting summary judgment for the defendants but also in denying his own motion for partial summary judgment. We will discuss the district court's rulings on assumption of risk, proximate causation, willful and wanton negligence and last clear chance in turn.
 
 II.
 
 8
 In order to prevail on the affirmative defense of assumption of the risk under controlling Virginia law, a defendant must prove both that the plaintiff fully appreciated the nature and extent of the risk and that the plaintiff incurred the risk voluntarily. Amusement Slides Corp. v. Lehmann, 232 S.E.2d 803, 805 (Va.1977). The district court noted that "[k]nowledge of the risk involved is essential to its assumption," but found that condition satisfied because "King fully appreciated the nature of his disability." In so reasoning, the court misunderstood the nature of the defense, which is that plaintiff assumed the risk of defendant's negligence. See Restatement (Second) of Torts Sec. 496A (1965) ("A plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm."). Although we can safely assume that King was aware of the risk, if any, that he posed to himself or to others, it is Wells's negligence for which he hopes to recover. Because King could not have been aware that Wells would have pulled his truck across route 19 in violation of law, King could not assume that risk. Cf. W. Page Keeton et al., Prosser and Keeton on Torts Sec. 68, at 487-89 (5th ed. 1984) ("Under ordinary circumstances the plaintiff will not be taken to assume the risk of either activities or conditions of which he has no knowledge.... And his knowledge of the negligence of one person does not mean that he assumes the risk of negligence of another, of which he does not know."). Since the defendants contend only that King himself breached a duty of care--not that he expressly or impliedly relieved Wells of a duty--assumption of risk was not an available defense on the undisputed facts of record.
 
 III.
 
 9
 Like assumption of risk, under Virginia law, contributory negligence is an absolute bar to recovery in tort. A defendant can make out the defense by proving by a preponderance of the evidence both that the plaintiff was contributorily negligent and that the plaintiff's contributory negligence was a proximate cause of his injuries. Karim v. Grover, 369 S.E.2d 185, 186 (Va.1988). A plaintiff can defeat the defense by showing either that the defendant was guilty of willful and wanton negligence, Griffin v. Shively, 315 S.E.2d 210, 213 (Va.1984), or that the defendant had the last clear chance to avoid the accident. Pack v. Doe, 374 S.E.2d 22, 25-26 (Va.1988). Consequently, defendants were entitled to summary judgment if and only if the record does not raise a genuine issue as to any one of these four material facts: that King was negligent, that his negligence was a factual and legal cause of the accident, that Wells's negligence was not willful and wanton, and that Wells did not have the last clear chance to avoid the collision. Fed.R.Civ.P. 56(c). We review the district court's grant of summary judgment de novo. Helm v. Western Maryland Ry. Co., 838 F.2d 729, 734 (4th Cir.1988).
 
 
 10
 King concedes that he was negligent per se for violating the terms of his driver's license--which is only to say that he owed a duty of care and that he breached that duty. See, e.g., Thomas v. Settle, 439 S.E.2d 360, 363 (Va.1994); Smith v. New Dixie Lines, Inc., 111 S.E.2d 434, 437 (Va.1959). Although he challenges the district court's conclusions of law regarding willful and wanton negligence and last clear chance, King's principal contention on appeal is that the district court erred in determining as a matter of law that his negligence was a proximate cause of his injuries. For the reasons that follow, we agree.
 
 A.
 
 11
 As do other courts and the commentators, the Virginia Supreme Court has long recognized that proximate causation is, at root and unavoidably, a question of policy and fairness. See, e.g., Scott v. Simms, 51 S.E.2d 250, 253 (Va.1949) ("There is no yardstick by which every case may be measured and fitted into its proper place. In each case the problem is to be solved upon mixed considerations of logic, common sense, justice, policy and precedent."); see generally Prosser & Keeton on Torts Sec. 42. For this reason, any particular formulation of the test for proximate causation necessarily will be imperfect. And although Virginia applies an expansive formulation that turns on whether the consequence followed from the negligent act "in natural and continuous sequence," Beale v. Jones, 171 S.E.2d 851, 853 (Va.1970); see also Norfolk & W. Ry. Co. v. Whitehurst, 99 S.E. 568, 569 (Va.1919) ("When once it has been determined that the act is wrongful or negligent, the guilty party is liable for all the consequences which naturally flow therefrom, whether they were reasonably to have been anticipated or not."), it is rare that proximate causation can be decided as a matter of law. For under Virginia law, if reasonable minds could differ regarding whether an accident was a "natural" consequence of a party's negligence--that is, if the dictates of justice, common sense, and precedent, are equivocal--then the question of proximate causation must be left for the jury to decide. Thomas, 439 S.E.2d at 363.
 
 B.
 
 12
 King's argument that proximate causation was properly a jury question in this case rests on his claim that he presented sufficient evidence in opposition to defendants' motion for summary judgment from which a factfinder could conclude that a driver with normal vision[3]probably would not have seen Wells's trailer in time to avoid the accident. In particular, King advances two independent reasons in support of his contention that a driver with normal vision in his place would not have avoided this accident.
 
 
 13
 First, King contends that there is a genuine issue regarding whether a person of normal vision would have seen the trailer lights. There were only three small amber lights visible to someone coming perpendicular to the truck--one at the rear, one at the front, and one at the middle. A yellow line had been painted along the length of the trailer but the evidence (taken in the light most favorable to King) revealed that the trailer had no reflective material.[4] The state trooper who responded to the scene of the accident testified that "they were small lights. At that time of the morning, I don't know if you could have s[een] them or not."
 
 
 14
 Second, and more significantly, King urges that the lights, even if visible, did not adequately convey the presence of a road hazard. In his opposition to summary judgment, King presented the affidavits of two experts in traffic safety and "human factors" engineering to support his contention that a driver with normal vision who did see the trailer's lights would have been unable to discern the character or location of the object to which they were attached. As one expert, Dr. Harry L. Snyder, professor emeritus of human factors engineering at Virginia Polytechnic Institute explained based on his published research into the causes of underride accidents, it is very nearly impossible for the human eye to distinguish depth, or distance to the lights, in circumstances such as those surrounding this accident. What Mr. King would have seen, assuming the trailer's lights were on, was one[yellow] light at the right edge of the road, i.e., the rear trailer light, one yellow light at the left side of the road, i.e., the front trailer light, and one yellow light in the middle of the road. Because the trailer was a flat-bed, Mr. King, or any driver approaching this trailer stretching across his two lanes of travel, would have been able to see below and above the trailer to the road or other traffic beyond. These confused reference points when coupled with a single middle light offered no basis for depth perception. In other words, a driver's eyes could not discern whether this light was a large yellow light a long distance away or a small yellow light very close.
 
 
 15
 Dr. Snyder concluded "[t]hat the vision problems which Mr. King had did not cause or contribute to this accident because, in my opinion, it is probable that no driver would have seen this trailer prior to hitting it."
 
 C.
 
 16
 We agree with King that the evidence as forecast on the summary judgment record would have permitted (though not required) a jury to find that even a driver with normal vision probably would have failed to see the trailer--or, put otherwise, that King himself would not have seen the trailer even if he had had normal vision.[5] Such a finding would entail that King's accident did not "naturally flow" from his negligence; that, instead, the accident occurred not because King could not see the trailer but because it could not be seen. For this reason, whether King's negligence in driving with impaired vision and in violation of law was the proximate cause of the accident and his injuries presented a genuine issue of material fact making summary judgment improper. It is for a jury, properly instructed on Virginia law, to inquire into the difficult questions of the likelihood that a driver with normal vision in King's place would have avoided the accident, and the degree to which King's disability increased the risk relative to the average driver.
 
 IV.
 
 17
 As a general matter, willful and wanton negligence "differs from negligence not only in degree but in kind, and in the social condemnation attached to it." Prosser & Keeton on Torts Sec. 65, at 462. In Virginia, "[w]illful and wanton negligence is acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." Griffin, supra, 315 S.E.2d at 213; see also Wolfe v. Baube, 403 S.E.2d 338, 340 & n. 4 (Va.1991) (defining "gross negligence" as "an utter disregard of prudence amounting to a complete neglect of the safety of[another] .... as would shock fair minded men" and observing that "[w]illful and wanton negligence is greater in degree than gross negligence") (quotation omitted). The defendants were entitled to summary judgment only if Wells's negligence was not willful and wanton as a matter of law. King was entitled to partial summary judgment on the question of liability if Wells's negligence was willful and wanton, so long as his own negligence was not likewise willful and wanton. Griffin, 315 S.E.2d at 213. The district court ruled that a reasonable jury could not find that Wells's negligence was willful and wanton and therefore did not assess the particular degree of King's own negligence.
 
 
 18
 It is uncontroverted that Wells, like King, was negligent per se. By driving his truck across the northbound lanes of Route 19 where and when he did, Wells violated his statutory duties to yield to all incoming traffic, Va.Code Sec. 46.2-826, and not to "stop a vehicle in such manner as to impede or render dangerous the use of the highway by others." Va.Code Sec. 46.2-888. Although Wells conceded that he knew the rules of the road, there is no mystery regarding why he violated them: he expected that the driver of the oncoming car would see the trailer and stop in time in the event that he (Wells) was forced to pause in the median. Though tragically mistaken, the expectation was not so lacking in reason as to constitute "willful and wanton" negligence. We agree with the district court's conclusion that no reasonable jury could find that Wells's conduct reflected a "reckless indifference" that would "shock fair minded" persons. The district court did not err in ruling that, as a matter of law, Wells was not guilty of willful and wanton negligence.
 
 V.
 
 19
 Like the concept of willful and wanton negligence, the doctrine of "last clear chance" provides plaintiffs a means to negate the defense of contributory negligence. It applies in either of two situations: "[w]here the injured person has negligently placed himself in a situation of peril from which he is physically unable to remove himself"--the "helpless plaintiff"; and "[w]here the plaintiff has negligently placed himself in a situation of peril from which he is physically able to remove himself, but is unconscious of his peril"--the "inattentive plaintiff." Greear v. Noland Co., 89 S.E.2d 49, 53 (Va.1955).
 
 
 20
 To invoke the doctrine on either basis, a plaintiff must of necessity conditionally concede his own negligence as a potential contributing cause of his injuries, and King does that here. We agree with the district court that on the summary judgment record, he failed as a matter of law to establish either basis. An essential element of the doctrine, whatever the basis relied upon, is that "the defendant realized or ought to have realized the plaintiff's peril in time to avert the accident by use of reasonable care." Park, supra, 374 S.E.2d at 25.
 
 
 21
 The district court ruled that as a matter of law on the undisputed facts, this element could not be found in King's favor.
 
 
 22
 While Wells saw King's vehicle approaching, he could have reasonably expected that King would see his trailer and slow down to avoid it. By the time Wells realized that King was not going to stop it was too late for him to back his truck across the intersection and avoid the collision.
 
 
 23
 We think the district court's ruling is fully supported by common sense as well as by Wells's uncontradicted deposition testimony. Wells explained that when he looked over his left shoulder the third time, he realized that King
 
 
 24
 was getting too close. I said, "Well, ain't he gonna stop?" Then I looked back at the other [southbound] car because I was getting ready to go. I mean, it was getting too close for me to be sitting there. Or I was hoping I could get out of the way because a whole lot of people don't slow up until they get right up on you because they know ... you're going to be moving out the way, and they just dodge around you.
 
 
 25
 Well, I looked back the fourth time and I didn't never get to the window. I just got to the mirror and I saw the headlights. Then the next thing I know it sounded like a big piece of glass like if you had dropped it on the highway.
 
 
 26
 Just when Wells should have realized that King was not going to slow down--and therefore that King must be unaware of the trailer's presence--is entirely speculative. While it is conceivable that, at that moment, Wells could have avoided the accident by shifting into reverse and backing the trailer off the highway into the parking lot, that possibility is manifestly remote indeed.
 
 
 27
 The Virginia Supreme Court has emphasized that "[a] plaintiff cannot recover under the doctrine of last clear chance on 'a mere perad venture.' " Id. (quoting Smith v. Spradlin, 132 S.E.2d 455, 457 (Va.1963)); see also Anderson v. Payne, 54 S.E.2d 82, 85 (Va.1949). "As the name of the doctrine implies, the defendant's chance must be ... a clear chance in order for there to be recovery under it." Smith, 132 S.E.2d at 457. Because a reasonable jury could not find by a preponderance of the evidence that Wells had a clear chance to avert the accident by the time he realized or should have realized that King was unaware of Wells's trailer, the district court properly ruled that, as a matter of law, King could not defeat the defense of contributory negligence by reliance on the doctrine of last clear chance.
 
 VI.
 
 28
 We therefore affirm the district court's rulings that, as a matter of law, Wells' negligence was not willful and wanton and Wells did not have the "last clear chance" to avoid the accident. We reverse the rulings that, as a matter of law, King's recovery is barred by the doctrine of assumption of risk and King's contributory negligence was the proximate cause of the accident. On this basis, we affirm the court's denial of King's motion for partial summary judgment, vacate the court's grant of summary judgment for defendants, and remand for further proceedings. On remand, the district court's rulings that, as a matter of law, Wells's negligence was not "willful and wanton" and Wells did not have the "last clear chance" stand as law of the case; whether King's per se contributory negligence was a proximate cause of the accident is, on the present record, a genuine issue of material fact.
 
 
 29
 SO ORDERED.
 
 
 
 [1]
 Virginia law prohibits the granting of a driver's license to any person whose corrected eyesight does not measure at least 20/40, with the exception that a "license permitting the driving of motor vehicles during a period beginning one-half hour after sunrise and ending one-half hour before sunset, may be issued to a person who demonstrates visual acuity of at least 20/70 in one or both eyes without or with corrective lenses." Va.Code Sec. 46.2-311. King's best corrected visual acuity as measured by standard stationary vision tests was 20/200. King had nonetheless been granted the restricted license thanks to the intervention of his long-time opthamalogist, who had recorded King's functional visual acuity at 20/70 through nonstandard testing procedures
 
 
 [2]
 King himself cannot testify as to whether he saw the trailer for he has no memory of the event. The absence of skid marks at the accident scene suggests that King did not see the trailer before he hit it
 
 
 [3]
 We use the term "normal vision" to mean the minimal degree of visual acuity with which a person could drive at night without breaching a duty of care to other users of the roads
 
 
 [4]
 Although the district court observed that the trailer did have reflective tape, the record on summary judgment contained evidence to the contrary. Moreover, at oral argument, defendants did not dispute King's assertion that the trailer had neither reflective tape nor reflective paint
 
 
 [5]
 In concluding that King had failed to create a genuine issue concerning causation, the district court ruled that much of Dr. Snyder's anticipated testimony would be inadmissible at trial. The court explained that Dr. Snyder's conclusion would be "overly prejudicial" and thus inadmissible under Fed.R.Evid. 403, and that his "opinions would not assist the trier of fact to understand the evidence as they rely more upon common sense than scientific inquiry and should not be considered." Of course, these evidentiary rulings are not final and King does not challenge them on appeal. Accordingly, we need not decide whether the body of King's experts' testimony tending to establish that Wells's trailer would probably not have been seen by any oncoming driver would be admissible under Fed.R.Evid. 702. See generally Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1054-55 (4th Cir.1986). We note, though, that the district court's view that such expert opinions would be inadmissible on the grounds that they reflect only "common sense" bolsters King's argument that there existed a genuine issue regarding proximate causation